CUEBAS Y ARREDONDO *v.* CUEBAS Y ARRE-DONDO.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO.

No. 159.   Submitted January 24, 1912.—Decided February 19, 1912.

Errors assigned as to finding of citizenship of a party dismissed from the suit at instance of appellant are not here for review except as to the force and effect to be given to a decree *pro confesso* against other defendants before dismissal of the bill.

Under the Foraker Act of April 12, 1900, 31 Stat. 85, c. 191, jurisdiction of the District Court of the United States was that of the District and Circuit Courts of the United States; the additional jurisdiction conferred by the act of March 2, 1901, 31 Stat. 953, c. 812, did not extend the jurisdiction so as to embrace all controversies in which any litigant on either side is a citizen of the United States or a subject of a foreign country.

The District Court of the United States for Porto Rico has not juris-
diction of a cause in which the sole plaintiff is a citizen of Porto Rico
and any of the defendants are citizens of Porto Rico, notwithstand-
ing one or more of the defendants may be citizens of the United
States or of a foreign country.

By the act of March 2, 1901, Congress did extend the jurisdiction of
the United States District Court for Porto Rico by cutting down
the necessary jurisdictional amount and dispensing with diversity
·of state citizenship, by substituting United States citizenship
therefor.

The final decree following a *pro confesso* order is only·such a decree as
. would be authorized by .the state of the pleadings when the order
was entered.

If a bill is fatally defective, showing that the court had·no jurisdiction,
it is error to allow a *pro confesso;* the order should be vacated, and
the defaulting defendant allowed to defend.

.Where an amendment is allowed that changes the character of the bill
and creates a jurisdiction not theretofore existing, the court should
set aside a default and give time to defend.

A decree *nunc pro tunc* presupposes a decree allowed or ordered, but
not entered through inadvertence of the court, or a decree under
advisement when the death of a party occurs. *Mitchell* v. *Overman,*
103 U. S. 62.

No attempt at·revision having been made at any time, there is no
ground to enter a decree *nunc pro tunc* in this case on any known
ground of equity procedure. · *Gray* v. *Brignardello,* 1 Wall. 627.

3 Porto Rico Fed. Rep. 67, affirmed.

The appellant, asserting herself to be a citizen of the
Island of Porto Rico, filed this bill to foreclose a mortgage
upon a plantation on the Island called "Carmelita." The
defendants to the bill were three in number, namely,
Cuebas y Arredondo, alleged to be a citizen of the United
States, residing in Porto Rico, Francisco Antongiorgi, de-
scribed as a citizen of and residing in Porto Rico, and El
Banco Territorial y Agricola, alleged to be a corporation
organized under the laws of Spain, and a citizen thereof,
doing business in the Island of·Porto Rico, with its prin-
cipal place of business in the city of San Juan.

. The averments as to the title and encumbrances upon

the said plantation, and the interests asserted by way of
lien, or mortgage, by the defendants Antongiorgi and El
Banco Territorial, etc., hereafter referred to as the Bank,
are complex, and for the purposes of this case, upon the
question now for decision, need not be stated otherwise
than to say that the bill alleged that they "have or claim
some interest in said mortgaged premises, or in some part
thereof, as purchasers, mortgagees, or otherwise, the exact
nature and extent of which interests are unknown to your
orator, if any at all they have, but the same are inferior .
and subsequent to the lien of the mortgage of your orator
and subject thereto."

Aside from the usual prayer for a decree declaring and
enforcing the lien of the mortgage asserted by a sale, etc.,
the bill asked that "the defendants and all persons claim-
ing under them subsequent to the commencement of this
suit, and all other persons although not parties to this
suit who have any liens or claims thereon by or under any
such subsequent judgment or decree, either as purchaser,
incumbrancer or otherwise, may be barred and foreclosed
of all equity of redemption in the said premises and that
your orator may have such other and further relief as the
nature of the case may require, and as to this court may
seem meet and agreeable to equity and good conscience."

The bill was filed April 6, 1904, in the District Court of
the United States for Porto Rico.

On July 11, 1903, the three named defendants, though
duly summoned to appear by a rule day named and make
their defense, made default, and the bill was on that day
taken for confessed under equity rule 19, *et seq.*

In March, 1905, the bank was permitted to file its an-
swer, in which it denied the equities of the bill and asserted
its own superior right under mortgages, judicial sale, and
by estoppel.

In October, 1906, it was permitted to . withdraw its
answer, and file a plea to the jurisdiction. That plea was

in these words, omitting the formal parts and conclusion:

"That this Court ought not to further take cognizance of the said bill of complaint because this defendant says that at the time of the filing of the same the Complainant herein was and still is a citizen of the Island of Porto-Rico and resident of the same and this defendant was and is a corporation organized and doing business under and by virtue of the laws of said Island of Porto-Rico and was and is a citizen of the same, and each and all of the other defendants herein are citizens and residents of the said Island of Porto-Rico, and that therefore this is a suit by and between citizens and residents of the said Island of Porto-Rico, of which this Court has no jurisdiction.

"That, as shown by the said Bill of Complaint, the jurisdiction of this Court over and of this suit is sought to be maintained not by reason of any Federal question being involved herein, but solely and only by reason of the alleged diverse citizenship of the parties herein and hereto and that as shown by the allegation of the said Bill of Complaint, the defendant is alleged to be a citizen of Spain and another of the defendants, to wit: Felipe Cuebas y Arredondo, is alleged to be a citizen of the United States of America and another of said defendants, to wit: Francisco Antongiorgi, is alleged to be a citizen of Porto-Rico, and that therefore it affirmatively appears by the allegations of the said Bill, if the same are true as therein alleged, that this is a case of which this court has not jurisdiction."

After first overruling this plea, for reasons set out in an opinion (4 P. R. Fed. Rep. 208), a rehearing was allowed and the plea sustained upon the ground that the bank was not a corporation of Spain, but one existing under the laws of Porto Rico, and a citizen of that Island for jurisdictional purposes (4 P. R. Fed. Rep. 509).

Prior to this action upon the plea of the bank, the date

not appearing, the complainant voluntarily dismissed her bill, as to Francisco Antongiorgi, whom the bill had averred to be a citizen of Porto Rico.

The judgment on the plea of the bank, above set out, was, that for lack of the requisite diversity of citizenship the bill should stand dismissed, "unless within five days from this date the bill can be amended so as to give the court jurisdiction."

Thereupon complainant entered an order, entitled: "Irene Cuebas y Arredondo vs. Felipe Cuebas y Arredondo et al.," which is in these words:

"Comes now the Complainant above named, by her Solicitors F. L. Cornwell and N. B. K. Pettingill, and, in pursuance of the permission granted by the Court in its order of the 7th day of June, 1909, conditionally dismissing said bill of complaint, hereby amend their said bill of complaint for the purpose of retaining jurisdiction in this Court by dismissing the same as to said defendant El Banco Territorial y Agricola.

"And in order to make said bill of complaint conform to such dismissal they hereby amend the same in the following particulars to wit:

"1. By striking from the same the last four lines of the preliminary paragraph of said bill in which the parties thereto are stated.

"2. By striking out paragraph number X of said bill of complaint.

"3. By striking out the name of said El Banco Territorial y Agricola wherever the same appears in the prayer for relief and in the prayer for process contained in said bill.

"And said bill of complaint having been heretofore amended so as to dismiss one Francisco Antongiorgi as a defendant therein and being now amended so as to dismiss the same as to said El Banco Territorial y Agricola, complainant hereby elects to proceed with the same as against the defendant Felipe Cuebas as sole defendant."

Thereupon the complainant moved the court for a final decree against the sole defendant, Felipe Cuebas, "as of a date prior to the death of Felipe Cuebas, so as to avoid the necessity for reviving as against his succession," etc. This the court denied, and dismissed the bill.

From this decree an appeal has been prosecuted.

*Mr. Frederick L. Cornwell* and *Mr. N. B. K. Pettingill,* for appellant:

The court below had jurisdiction of the case and of the bank as a party thereto.

The defendant bank was, in law, a Spanish corporation. It did not cease to be Spanish because by the cession of Porto Rico its field of activity was no longer within Spanish territory. *Society &c.* v. *New Haven,* 8 Wheat. 464, 483; *Society &c.* v. *Pawlet,* 4 Pet. 480, 502.

Even if the bank was not a Spanish corporation, the presence of one party defendant, who was a citizen of the United States, was sufficient to give the court jurisdiction of the cause and of all proper parties thereto.

A corporation owes allegiance to the sovereignty which created it and must be considered a citizen or subject of that sovereign. *Bank of Augusta* v. *Earle,* 13 Pet. 519; *Insurance Co.* v. *Francis,* 11 Wall. 210; *Shaw* v. *Quincy Mining Co.,* 145 U. S. 444; *Jellenik* v. *Huron Copper Co.,* 177 U. S. 1.

The existence of the bank as a Spanish corporation could only be terminated by legal dissolution or by forfeiture by that sovereignty. *Frost* v. *Frostburgh Coal Co.,* 24 How. 278.

One foreigner or citizen of the United States is a party sufficient to sustain jurisdiction.

This question has never come before this court for adjudication. The original construction given the statute by the court below was right. That result is logical.

It is consistent with the ordinary and simple meaning

of the language used. If Congress had intended to restrict
the jurisdiction to cases where all parties, either plaintiff
or defendant, were within its provisions, it could very
easily have made that meaning plain.

For definitions of the word "either" see Webster, as
"one or another of any number". That definition is ap-
plied as its ordinary legal meaning. *Lafoy* v. *Campbell*, 42
N. J. Eq. 34; *Messer* v. *Jones*, 88 Maine, 349, 356; *Ft.
Worth Co.* v. *Rosedale Co.*, 68 Texas, 169; *Dew* v. *Barnes*,
54 No. Car. 149; *Graham* v. *Graham*, 23 W. Va. 36, 43;
*People* v. *Willis*, 39 N. Y. Supp. 987, 989.

The word "parties" is used in its sense of ordinary legal
acceptation analogous to its use in such phrases as "nec-
essary parties," "indispensable parties," "parties liti-
gant," etc. There is nothing to show that Congress in-
tended to use the word in any technical or restricted sense.
This court will take judicial notice of political conditions
and the general purposes of legislation and so doing it is
matter of history that the Federal court of Porto Rico
was established, and its jurisdiction afterwards enlarged
by this amendment, for the very purpose of securing full
protection to the property rights of the American citizens
and foreigners resident in Porto Rico.

As the object of the amendment was to enlarge the ju-
risdiction, it should be liberally construed for that pur-
pose.

In *Valecilla* v. *Hermano*, 2 Porto Rico Fed. Rep. 46, the
District Court followed this court in *Smith* v. *Lyon*, 133
U. S. 316, construing the jurisdictional acts respecting
diverse citizenship, enacted for the purpose of meeting
conditions in the States the very opposite of those to meet
which the Porto Rican statute under discussion was
enacted.

But see distinction aptly expressed in *Garrozi* v. *Dastas*,
204 U. S. 73.

Therefore, whether or not the defendant bank was in

such sense an alien institution as to aid in sustaining the jurisdiction, that jurisdiction properly and sufficiently attached because one of the parties defendant—and the only indispensable one—was a citizen of the United States.

The defendant bank is not an indispensable party. *Brewster* v. *Wakefield*, 22 How. 118, 128; *Nalie* v. *Young*, 160 U. S. 642; *Jerome* v. *McCarter*, 94 U. S. 736.

Whether, therefore, the bank was a prior or subsequent mortgagee as a matter of law, it was nothing more than a mortgagee, and could not have been, under the above authorities, an indispensable party.

Laches is not a defense to a suit for foreclosure of mortgage, that defense being confined to cases of a character where no statute of limitations is directly applicable and the jurisdiction is not concurrent. Story's Equity Juris. (13th ed.), § 1520; *Rankin* v. *Scott*, 12 Wheat. 177; *Cross* v. *Allen*, 141 U. S. 528; *Met. N. Bank* v. *Dispatch Co.*, 149 U. S. 448; *Boone* v. *Pierpont*, 28 N. J. Eq. 7; *Diefenthaler* v. *New York*, 111 N. Y. 331; *Fullwood* v. *Fullwood*, 9 Ch. Div. 176; *In re Baker*, 20 Ch. Div. 230.

A court cannot relegate a litigant to another forum merely because, in its opinion, such course would be more expedient. *McClellan* v. *Garland*, 217 U. S. 268, 282.

Where a Federal court will be deprived of its jurisdiction based upon the character of the parties by the presence of some party not absolutely indispensable, a complainant will be allowed to dismiss as to any such party if a proper decree can be entered in his absence which does not affect his interest—which was exactly what complainant asked leave to do when forced to dismiss as to the bank. *Vattier* v. *Hinde*, 7 Pet. 252, 261; *Horn* v. *Lockhart*, 17 Wall. 570, 579; *Tug &c. Co.* v. *Brigel*, 30 C. C. A. 415; *Boatman's Bk.* v. *Fitzlen*, 68 C. C. A. 288, 296.

This suit was begun before the one in the insular court, and by the filing of a foreclosure bill the mortgaged property is theoretically placed *in custodia legis*. Hence the

court below and not the insular court "first took possession of the *res.*" *Farmers' L. & T. Co.* v. *Lake St. E. R. Co.*, 177 U. S. 51.

A decree should have been granted against defendant Cuebas.

Under the provisions of equity rules 18 and 19, a complainant after an order *pro confesso* is entitled without the production of supporting proof to such a decree as is warranted by the allegations of his bill. *Thompson* v. *Wooster*, 114 U. S. 104; *Ohio Cent. R. Co.* v. *Central Trust Co.*, 133 U. S. 83, 90.

The court's refusal of this request of complainant was not based upon any question of proof, but upon the supposed infirmities of the bill itself.

Upon the death of a party defendant during the progress of a cause the court may, upon request of complainant, enter its final decree *nunc pro tunc* as of a date prior to such death so as to avoid the necessity of proceedings for revivor. *Mitchell* v. *Overman*, 103 U. S. 62; *New Orleans* v. *Gaines' Adm'r*, 138 U. S. 595, 612; *Campbell* v. *Misier*, 4 Johns. Ch. 342.

No brief filed for appellees.

*Mr. F. Kingbury Curtis* and *Mr. Henry A. Stickney*, by leave of the court, filed a brief as *amici curiæ* on behalf of Banco Territorial y Agricola:

Since the bank is not a party to the appeal, the questions raised by the first, second and third assignments of error are not before this court for determination. *Marshall Field & Co.* v. *Wolf & Bro. Co.*, 120 Fed. Rep. 815; *Wilson* v. *Kiesel*, 164 U. S. 248; *Boyd* v. *Stuttgart & A. R. R.*, 84 Fed. Rep. 9; *Ill. Trust & Sav. Bank* v. *Kilbourne*, 76 Fed. Rep. 883; *Davis* v. *Trust Co.*, 152 U. S. 590; *Grand Is. & W. C. R. Co.* v. *Sweeney*, 95 Fed. Rep. 396; 103 Fed. Rep. 342, 348.

By the voluntary dismissal as against the bank, the complainant is precluded from questioning the decision of the court below to the effect that it had no jurisdiction in the cause while the bank was a party defendant. *Hill* v. *Chicago & Evanston R. R. Co.,* 140 U. S. 52 at p. 54.

The court below correctly decided that with the bank as a party defendant there was no jurisdiction in this cause.

Mr. Justice Lurton, after stating the facts as above, delivered the opinion of the court.

The bank is not a party to this appeal. The appellant has elected to dismiss her bill, both as to it and the other Porto Rican defendant, Antongiorgi, for the express purpose of creating jurisdiction of a suit between complainant, a citizen of the Island of Porto Rico, and the remaining original defendant, Felipe Cuebas, a citizen of the United States. Her bill, as amended, contains no reference to the bank, or even of its existence. It was the bill, as thus amended, which was dismissed by the court. We mention this because two of the errors assigned and argued in the brief of counsel for appellant relate to the action of the court, first, in holding that the bank was in law a citizen of Porto Rico, and, second, in holding that, that being so, the jurisdiction of the court to maintain the suit, with citizens of Porto Rico, on both sides of the case, would be defeated. The action of the court in respect to the matter first mentioned is not here for review, and the other only in so far as it may become necessary to deal with it for the purpose of determining the force and effect to be given to the decree *pro confesso* against Felipe Cuebas.

It was not error in the situation of this case to deny a final decree against the succession of Felipe Cuebas upon the foundation of the *pro confesso* order made on a rule day five years theretofore. When that *pro confesso* was

taken against Cuebas the suit was one of which the District Court had no cognizance. The sole complainant was a citizen of Porto Rico, and Cuebas was a citizen of the United States and therefore subject to be sued in that court by the complainant, if the citizenship of the other persons on the same side was such as not to defeat jurisdiction. But that was not the case. One of them, Francisco Antongiorgi, was alleged in the bill to be a citizen of the Island of Porto Rico. The other defendant, the bank, was averred to be a corporation organized under the laws of Spain and a citizen thereof. But later, as we have already stated, the bank's plea that it was a corporation under the laws of Porto Rico and a citizen of Porto Rico was sustained. The case was, then, one which, upon the face of the bill, showed that one of the defendants had a citizenship common with that of the complainant, and later it turned out that a second had a like citizenship.

It is not and cannot be claimed that the complainant's bill asserted any right, title or claim arising under the laws or Constitution of the United States. If, therefore, the District Court had jurisdiction, it must depend upon diversity of citizenship alone.

It is claimed that the fact that one of the three defendants was a citizen of the United States conferred jurisdiction, although the other two were Porto Ricans, with a citizenship identical with that of the complainant. That this would not have been so under the Foraker act of 1900 is conceded. That act gave to the District Court for Porto Rico the jurisdiction of the United States District Courts, and added to that the jurisdiction of cases cognizable in Circuit Courts of the United States. The contention is that this extraordinary stretch of jurisdiction is conferred by the third section of the act of March 2, 1901, c. 812, 31 Stat. 953. That section reads as follows:

"That the jurisdiction of the district court of the United States for Porto Rico in civil cases shall, in addition to that conferred by the Act of April twelfth, nineteen hundred, extend to and embrace controversies where the parties, or either of them, are citizens of the United States, or citizens or subjects of a foreign State or States, wherein the matter in dispute exceeds, exclusive of interest or costs, the sum or value of one thousand dollars."

Shortly stated, the construction placed upon this section is, that the word "parties" is not used collectively, meaning all of the litigants on the one side or the other, but is intended as if the word "litigants" had been used, and that the words "or either of them" means "any of them," and that the jurisdiction conferred embraces all controversies in which any litigant on either side is a citizen of the United States or a subject of a foreign country.

The construction contended for is out of accord with that placed upon the act in *Vallecillo* v. *Bertran*, 2 P. R. Fed. Rep. 46, a construction constantly adhered to by the court below since 1906. It is also a construction out of harmony with a long line of decisions of this court construing the jurisdictional clauses in the various statutes dealing with the question of jurisdiction dependent upon diversity of citizenship. The first of the decisions referred to involved the meaning of the clause in the Judiciary Act of 1789, conferring jurisdiction over controversies "where an alien is a party, or the suit is between a citizen of a State where the suit is brought and a citizen of another State." The question arose in *Strawbridge* v. *Curtiss*, 3 Cranch, 267, whether it was essential to jurisdiction that all of the parties on one side should have a citizenship different from that of all of the parties on the other. In that case the complainants were citizens of Massachusetts and some of the defendants were citizens of the same State. But one of the defendants was a citizen

of Vermont, and this fact was claimed to give jurisdiction. To this, the court, by Chief Justice Marshall, said:

"The court understands these expressions to mean, that each distinct interest should be represented by persons, all of whom are entitled to sue, or may be sued, in the federal courts. That is, that where the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued, in those courts."

This construction of that clause and of like words in later statutes, concerning jurisdiction dependent upon diversity of citizenship has been followed in many cases, among them being *Coal Co.* v. *Blatchford,* 11 Wall. 172, and *Smith* v. *Lyon,* 133 U. S. 315. In the case first referred to Mr. Justice Field stated the matter in words quite as applicable here, by saying: "If there are several co-plaintiffs, the intention of the act is that each plaintiff must be competent to sue, and if there are several co-defendants each defendant must be liable to be sued, or the jurisdiction cannot be sustained."

In view of these decisions we should be slow to conclude that Congress intended any other rule as to the arrangement of the parties where diversity of citizenship is the basis of jurisdiction than that laid down in construing like statutes upon the same subject. The contention that from the evident intention of Congress to enlarge the jurisdiction of the court we should infer an intent to confer jurisdiction to the extent claimed is without merit. Congress, in very plain words, did extend the jurisdiction, first, by cutting down the necessary jurisdictional amount to one thousand dollars, and second, by dispensing with diversity of state citizenship. United States citizenship is substituted for diverse state citizenship.

We, therefore, conclude that the court had no jurisdiction of this cause when the *pro confesso* order was entered against Felipe Cuebas.

The final decree following a *pro confesso* order is only such a decree as would be authorized by the state of the pleadings when the order was entered. *Frow* v. *De La Vega,* 15 Wall. 552; Daniel's Chancery Pl. & Pr., pp. 525–528, 5th ed., and notes; *Simmonds* v. *Palles,* 2 Jones and La Touche's 489; *Hardwick* v. *Bassett,* 25 Michigan, 149; *McDonald* v. *Mobile Life Ins. Co.,* 56 Alabama, 468. If the bill was fatally defective upon its face, showing that the court had no jurisdiction, it was error to allow a *pro confesso,* and upon the court's attention being called to it, it should have vacated the order and allowed the defaulting defendant to defend. *Nelson* v. *Eaton,* 66 Fed. Rep. 376; *Blythe* v. *Hinckley,* 84 Fed. Rep. 228, 244; *Eldred* v. *Am. Palace Car Co.,* 103 Fed. Rep. 209.

That the bill was subsequently amended so as to confer jurisdiction against Cuebas as sole defendant, by dismissing the bill against the other two defendants and striking out the prayer of the bill that any and every claim, interest, or incumbrance be forever barred and cut off, did not justify a decree based upon the order *pro confesso* made prior thereto. Upon such amendment being made, so completely changing the character of the bill, creating a jurisdiction which had not theretofore existed, the court should have set aside the default and given time to defend.

But the allowance of a final decree *nunc pro tunc* would have been still more inadmissible. Cuebas had been then dead for, apparently, some years. There had been no revivor. If there had been his representatives would doubtless have moved to vacate the *pro confesso* decree upon the ground suggested, and it would have been error to have denied that motion. The motion to enter a decree as of a day before his death would, if allowed, have been fruitless, for it would bear a date antecedent to the acquirement of jurisdiction, and therefore erroneous, if of any validity.

But no decree *nunc pro tunc* was admissible. Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court; or a decree in a cause which is under advisement when the death of a party occurs. *Mitchell* v. *Overman*, 103 U. S. 62. There is no claim that a final decree in pursuance of the allegations of the bill had ever been directed and through inadvertence of either court or counsel omitted from entry. There was, therefore, no authority for a decree *nunc pro tunc* upon any known ground of equity procedure. *Gray* v. *Brignardello*, 1 Wall. 627.

No effort to revive the cause against the succession of Cuebas was at any time made. The complainant stood upon her right to a final decree *nunc pro tunc*. When this was denied she still made no effort to revive the cause, though Cuebas had been dead a long time. It was not error in such circumstances to dismiss the bill.

*Decree affirmed.*

