Genevieve G. GEORGE,
Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary
of Health and Human Services,
Defendant–Appellee.

No. 89–2026.

United States Court of Appeals,
Sixth Circuit.

Argued June 4, 1990.

Decided June 14, 1990.

Shirley A. Cushing (argued), Lakeshore Legal Services, Mt. Clemens, Mich., for plaintiff-appellant.

Robert Hanson, Thomas P. Turner (argued), Dept. of Health and Human Services, Office of the Gen. Counsel, Region V, Chicago, Ill., Ellen Christensen, U.S. Atty's. Office, Detroit, Mich., for defendant-appellee.

Before KRUPANSKY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Claimant Genevieve G. George appeals from the district court's order which affirmed the Secretary of Health and Human Services' denial of George's claim for divorced wife's social security insurance benefits pursuant to 42 U.S.C. §§ 402(b) and 416(d)(1). For the following reasons, we affirm the judgment of the district court.

I.

Claimant filed her application for divorced wife's insurance benefits on August 21, 1985. The Secretary of Health and Human Services (Secretary) denied George's claim on November 4, 1986. The Secretary denied claimant's application upon reconsideration on January 16, 1987. Dissatisfied with the Secretary's determination, the claimant requested a hearing before an Administrative Law Judge (ALJ). This hearing was held on February 16, 1988.

On March 23, 1988, the ALJ issued his decision denying benefits to the claimant. The Appeals Council denied George's request for review on July 8, 1988, thereby allowing the ALJ's decision to be the Secretary's final decision. Claimant appealed to the district court. On July 11, 1989, the United States Magistrate issued his Report and Recommendation proposing that the Secretary's decision be upheld. Claimant filed objections to the Magistrate's Report and Recommendation. On August 2, 1989, the district court judge granted the Secretary's motion for summary judgment in accordance with the Magistrate's Report and Recommendation. Claimant thereafter filed this timely appeal.

The following evidence was introduced at the February 16, 1988 hearing.

Claimant was born on February 12, 1920, and was 65 years old when she filed an application for divorced wife's insurance benefits on August 21, 1985. After completing high school and attending college for two years, George worked for the United States Department of Defense for 30 years before retiring in 1980.

The appellate record includes Genevieve George and Vito Mazzola's marriage certificate dated November 9, 1940. The record also contains Genevieve and Vito Mazzola's divorce decree that was entered in the

Wayne County Circuit Court (Michigan) on May 3, 1950. The divorce decree specifically stated that the action was interlocutory, adding that the divorce would not become final until six months after the entry date of the decree. The divorce therefore became final on November 3, 1950.

Claimant initially filed an application for divorced wife's benefits in November, 1981. George's application was denied, however, because her marriage to Vito Mazzola had lasted less than ten years. George subsequently petitioned the Wayne County Circuit Court to change the entry date of the interlocutory decree. The claimant and her former husband (Vito Mazzola) appeared in the chambers of a Wayne County Circuit Court judge. Though George was represented by counsel, Mazzola was not. No formal record of the proceedings was made.

On June 2, 1983, the Wayne County Circuit Court judge entered a judgment nunc pro tunc[1] changing the date of the interlocutory decree to May 17, 1950, thereby changing George's final divorce date to November 17, 1950. After the claimant readily admitted that she obtained the nunc pro tunc divorce decree solely to satisfy the Secretary's ten-year duration of marriage requirement, and admitted that her former husband appeared at the nunc pro tunc proceeding solely to protect his second wife's interests, the Secretary denied George's August 21, 1985 application initially and on reconsideration.

The ALJ similarly denied George's claim for divorced wife's insurance benefits. The ALJ found the claimant's nunc pro tunc divorce decree insufficient to extend the duration of George's marriage beyond the ten years required to make her eligible for divorced wife's insurance benefits pursuant to 20 C.F.R. § 404.331(a)(2) (1988).

On appeal, claimant argues that she has satisfied the Secretary's ten-year duration of marriage requirement by virtue of the Wayne County Circuit Court's *nunc pro tunc* divorce decree.

## II.

### A.

■ This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. § 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). When determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole," *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980), and we " 'must take into account whatever in the record fairly detracts from its weight.' " *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir.1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)). If the Secretary's findings are supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983).

### B.

■ The claimant, Genevieve George, argues that she is entitled to divorced wife's

---

1. *Black's Law Dictionary* defines *nunc pro tunc* as: "Now for then. A phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect, i.e., with the same effect as if regularly done. *Nunc pro tunc* entry is an entry made now of something actually previously done to have effect of former date; office being not to supply omitted action, but to supply omission in record of action really had but omitted through inadvertence or mistake. *Nunc pro tunc* merely describes inherent power of court to make its records speak the truth, i.e., to record that which is actually but is not recorded." *Black's Law Dictionary* 964 (5th ed. 1979).

social security benefits following her *nunc pro tunc* divorce decree. George does not argue that the divorce date on the original divorce decree was erroneous. Instead, claimant admits that she obtained the *nunc pro tunc* divorce decree solely to meet the ten-year duration of marriage requirement necessary for divorced wife's social security benefits.

42 U.S.C. § 402(b) provides for social security insurance benefits to:

(1) The wife (as defined in section 416(b) of this title) and every divorced wife (as defined in section 416(d) of this title) of an individual entitled to old-age or disability insurance benefits, if such wife or such divorced wife—

(A) has filed [an] application for wife's insurance benefits,

(B) has attained age 62 or (in the case of a wife) has in her care (individually or jointly with such individual) at the time of filing such application a child entitled to a child's insurance benefit on the basis of the wages and self-employment income of such individual,

(C) in the case of a divorced wife, is not married, and

(D) is not entitled to old-age or disability insurance benefits, or is entitled to old-age or disability insurance benefits based on a primary insurance amount which is less than one-half of the primary insurance amount of such individual.

42 U.S.C. § 402(b)(1) (1989). The United States Code defines "divorced wife," for purposes of 42 U.S.C. § 402(b), as: "The term 'divorced wife' means a woman divorced from an individual, but only if she had been married to such individual for a period of 10 years immediately before the date the divorce became effective." 42 U.S.C. § 416(d)(1) (1983). Furthermore, "[t]he terms 'divorce' and 'divorced' refer to a divorce *a vinculo matrimonii.*" 42 U.S.C. § 416(d)(8) (1983).[2] Both parties agree that the only disputed requirement in

the instant action is the ten-year duration of marriage requirement.

Genevieve George and Vito Mazzola were married on November 9, 1940. The interlocutory divorce decree was entered on May 3, 1950. The divorce became final on November 3, 1950, six days prior to the couple's tenth anniversary. The claimant argues, however, that the *nunc pro tunc* divorce decree obtained in the Wayne County Circuit Court effectively changed the final divorce date to November 17, 1950, thereby satisfying the Secretary's ten-year requirement.

George argues that the Secretary is bound by the Michigan court's *nunc pro tunc* divorce decree. A similar argument was previously addressed by this court: "Although the Secretary is not bound by the decision of a State trial court in a proceeding to which he was not a party, we hold that he is not free to ignore an adjudication of a state trial court where it is fair and consistent with the law as enunciated by the highest court of the State." *Gray v. Richardson*, 474 F.2d 1370, 1373 (6th Cir.1973). Furthermore, "[s]ince this is a situation falling within the general category of domestic relations, special deference should be given by federal tribunals to the resolution by the State court. Traditionally the states, not the federal government, have been considered the exclusive arbiter of these problems." *Id.*

■ Pursuant to *Gray*, the Secretary is bound by a state court determination where the following prerequisites are satisfied: (1) an issue in a claim for social security benefits has been previously determined by a state court of competent jurisdiction; (2) this issue was genuinely contested before the state court by parties with opposing interests; (3) the issue falls within the general category of domestic relations law; and (4) the resolution by the state trial court is consistent with the law enunciated by the highest court in the state. *Id.* Both the appellant and the ap-

---

**2.** *Black's Law Dictionary* defines "divorce *a vinculo matrimonii*" as: "A divorce from the bond of marriage. A total divorce of husband and wife, dissolving the marriage tie, and releasing the parties wholly from their matrimonial obligations." *Black's Law Dictionary* 431 (5th ed. 1979).

pellee agree that *Gray* sets forth the principles governing this action.

The Secretary argues that George's claim was correctly denied because, under the analytical framework provided in *Gray:* (1) claimant's *nunc pro tunc* divorce decree was not the result of a truly contested proceeding, and (2) the *nunc pro tunc* divorce decree is not consistent with the law enunciated by the Michigan Supreme Court. The Secretary therefore argues that he is not bound by the state court's *nunc pro tunc* divorce decree. We agree.

The claimant has presented insufficient evidence to demonstrate that the *nunc pro tunc* divorce decree was genuinely contested in the Michigan state court. Although a proceeding was held, it was conducted *in camera* (in the judge's chambers) and there is no indication that any evidence was presented or that any material controversy was resolved. Furthermore, Vito Mazzola, appearing merely to protect his interests in his second marriage, was not represented by an attorney. Indeed, the claimant admitted that Mazzola did not object to her petitioning for the *nunc pro tunc* decree. Accordingly, the state court *nunc pro tunc* proceedings cannot be viewed as "genuinely contested" within the *Gray* standard.

■ Furthermore, George's specific use of the *nunc pro tunc* divorce decree is inconsistent with Michigan Supreme Court precedent. "The lower courts misconstrued the purpose of an order *nunc pro tunc.* The function of such an order is to supply an *omission in the record* of action previously taken by the court but not properly recorded." *Sleboede v. Sleboede,* 384 Mich. 555, 558–59, 184 N.W.2d 923 (1971) (emphasis in original). The Michigan Supreme Court continued: " 'Briefly stated, the purpose of a *nunc pro tunc* order is not to change or alter an order or judgment actually made. In other words its function is not to make an order now for then, but to enter now for then an order previously made.' " *Id.* at 559, 184 N.W.2d 923 (quoting *Mathey v. Mathey,* 175 Kan. 446, 451, 264 P.2d 1058 (1953)). *Nunc pro tunc* "is merely descriptive of the inherent power of the court to make its records speak the truth—to record that which was actually done, but omitted to be recorded." *Sleboede,* 384 Mich. at 559 n. 6, 184 N.W.2d 923 (quoting *W.F. Sebel Co. v. Hessee,* 214 F.2d 459, 462 (10th Cir.1954)).

The Michigan Supreme Court's limited use of *nunc pro tunc* entries is in accord with numerous other jurisdictions: *Cuebas Y Arredondo v. Cuebas Y Arredondo,* 223 U.S. 376, 32 S.Ct. 277, 56 L.Ed. 476 (1912) (A *nunc pro tunc* "decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court; or a decree in a cause which is under advisement when the death of a party occurs." *Id.* at 390, 32 S.Ct. at 281); *Cypress Barn, Inc. v. Western Elec. Co.,* 812 F.2d 1363 (11th Cir.1987) ("A *nunc pro tunc* order merely recites court actions previously taken but not properly or adequately recorded." *Id.* at 1364); *Crosby v. Mills,* 413 F.2d 1273 (10th Cir.1969) ("An order may be entered *nunc pro tunc* to make the record speak the truth but it cannot supply an order which in fact was not previously made." *Id.* at 1277); *Board of Educ. of Evanston Township v. Admiral Heating & Ventilation, Inc.,* 525 F.Supp. 165 (N.D. Ill.1981) ("It is familiar doctrine that a *nunc pro tunc* order is not a permissible synonym for retroactivity but rather is limited to current correction of the record to speak an earlier truth: an order made earlier but not formally entered." *Id.* at 168).

In the instant action, George is not attempting to correct the state court's records regarding when her 1950 divorce became final. Instead, the claimant readily admits that she sought the *nunc pro tunc* divorce decree solely to obtain divorced wife's social security benefits. The claimant's reliance on *Vioglavich v. Vioglavich,* 113 Mich.App. 376, 317 N.W.2d 633 (1982) (after erroneously relying on the judge's oral statements, Vioglavich sought to ratify a marriage entered into prior to the final judgment of divorce), is therefore misplaced. Furthermore, Michigan precedent seemingly would not permit *nunc pro tunc* judgments to be used to circumvent the Social Security Act's marriage duration requirement. Because George has failed to

satisfy two of the four prerequisites set forth in *Gray*, the Secretary is not bound by George's *nunc pro tunc* divorce decree. Accordingly, the Secretary, and the district court, properly found that George failed to satisfy the ten-year duration of marriage requirement pursuant to her original divorce decree.

Because substantial evidence supports the district court's finding that the claimant is not entitled to divorced wife's social security benefits, the district court's order is AFFIRMED.[3]

**3.** Claimant argues that the Wayne County Circuit Court's *nunc pro tunc* order must be given full faith and credit by the Secretary. This argument has previously been rejected by this court:

The Secretary was under no constitutional compulsion to give full faith and credit to the state court decree.... Section 216(h) of the Social Security Act contemplates that the Secretary determine the law of the state as it has been declared by the Supreme Court of the state. Where, as here, the Supreme Court has

not had the occasion to declare the law, the Secretary may follow the opinion of a *nisi prius* court; but if he believes its decision to be in conflict with what the Supreme Court "would find" were the point presented to it, he may disregard that lower court's decision.

*Dennis v. Railroad Retirement Bd.*, 585 F.2d 151, 153–54 (6th Cir.1978) (quoting *Cain v. Secretary of Health, Educ. & Welfare*, 377 F.2d 55, 58 (4th Cir.1967)). George's full faith and credit argument is therefore without merit.