United States Court of Appeals
Fifth Circuit

**F I L E D**

June 4, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————————

No. 05-60661

————————

HERBERT SALVADOR ROMERO-RODRIGUEZ,

Petitioner,

versus

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

————————

Petition for Review of an Order of the
Board of Immigration Appeals

————————

Before KING, GARZA, and OWEN, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This case relates to an alien's eligibility to apply for a waiver of removal under the

Immigration and Nationality Act ("INA") § 212(c), formerly 8 U.S.C. § 1182(c) (1995) (repealed

1996).[1] Section 212(c) grants the Attorney General the discretionary authority to waive removal for

permanent residents who have been in the United States for more than seven years. An alien is not

————————

[1] All references to 8 U.S.C. § 1182(c) are to the 1995 version of statute prior to its
revocation. Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub L. No. 104-
132, § 440(d), 110 Stat. 1214.

eligible to apply for a § 212(c) waiver if he has "served . . . a term of imprisonment of at least 5 years." *Id.* The eligibility issue in this case is one of timing. The petitioner, Herbert Romero-Rodriguez ("Romero"), sought a § 212(c) waiver twice and the Board of Immigration Appeals ("BIA") denied his eligibility to apply both times. He was denied once in 2000, when he had served less than five years in prison, and once in 2004, when he had served more than five years in prison. The difficulty in this case is that BIA denied Romero's 2000 application in error, and then when the BIA reopened the case, it denied his application in 2004 because he had served more than five years in prison. So the bar to eligibility in 2004 was not a bar to eligibility when the BIA erroneously denied Romero's application in 2000. In denying eligibility on the 2004 application, the BIA found that the relevant date for determining Romero's time served in prison was the date of the BIA's decision on the second application. Romero argues that the relevant date for determining his time served should be the date the BIA initially, and erroneously, denied his § 212(c) eligibility in 2000. Two other circuits have already addressed this issue and have come to differing conclusions. *See Fernandes Pereira v. Gonzales*, 417 F.3d 38 (1st Cir. 2005) (finding petitioner ineligible to apply for a § 212(c) waiver because the statute's language clearly precludes petitioners who have served more than five years in prison); *Edwards v. INS*, 393 F.3d 299 (2nd Cir. 2004) (finding petitioner eligible to apply for a § 212(c) waiver through the equitable doctrine of *nunc pro tunc*).

I

Romero, a native and citizen of El Salvador, was legally admitted into the United States and, in 1989, obtained lawful permanent resident status. In 1994, he pleaded guilty to aggravated assault. Initially, he was sentenced to seven years probation, but in 1995, he violated that probation. He began serving a six-year term of imprisonment on September 24, 1996. While Romero was

incarcerated, the INS initiated removal proceedings. On October 13, 1999, the Immigration Judge ("IJ") found that Romero's assault conviction qualified as an aggravated felony, pursuant to 8 U.S.C. § 1101(a)(43)(F), and, therefore, that Romero was removable under 8 U.S.C. § 1227(a)(2)(A)(iii). Romero appealed to the BIA and sought a waiver of deportation through INA § 212(c), 8 U.S.C. § 1182(c), which granted the Attorney General discretionary power to waive removal of permanent residents who have lived in the U.S. for more than seven years and who have not served more than five years in prison.

The BIA upheld the IJ's removal decision and denied Romero's request for a § 212(c) waiver. The statutory authority to grant § 212(c) waivers had been revoked in 1996, three years before Romero's application. AEDPA § 440(d) (1996). Following the revocation, the BIA limited § 212(c) eligibility to those aliens whose removal proceedings were pending or completed at the time Congress revoked § 212(c). *In re Soriano*, 21 I. & N. Dec. 516, 519 (BIA 1996). Because Romero's request for a § 212(c) waiver was not pending or completed at the time of the revocation, the BIA denied him eligibility to apply. Romero's initial request for § 212(c) relief was denied on March 31, 2000, the date of the BIA decision.

It is indisputable that this decision of the BIA, as it relates to § 212(c) eligibility, was in error. In 2001, the Supreme Court decided *INS v. St. Cyr*, 533 U.S. 289, which took a more expansive view of § 212(c) eligibility than that previously taken by the BIA. *Id.* at 326. The Court held that "§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Id.* Romero had pleaded guilty to his aggravated assault conviction in 1994, two years before § 212(c) was revoked. Therefore, the BIA

should have considered Romero's request for § 212(c) relief when it considered his application in 2000.

After *St. Cyr*, the BIA began considering requests for § 212(c) waivers from petitioners, like Romero, who had pleaded guilty to the convictions underlying their deportation prior to the revocation of § 212(c). In 2002, Romero filed a motion to reopen proceedings with the BIA. The BIA granted his motion to reopen and remanded his case to an IJ. In the meantime, Romero was released from prison on September 24, 2002, bringing his total time served in prison to six years. Both the IJ and the BIA denied his application for a § 212(c) waiver because, by that time, he had served more than five years in prison, and they held he was statutorily ineligible to apply for a § 212(c) waiver. 8 U.S.C. § 1182(c). The BIA denied Romero's second request for § 212(c) eligibility on March 10, 2004.

## II

Romero's argument is one of statutory interpretation. We therefore have jurisdiction to hear this appeal because it raises a question of law. 8 U.S.C. § 1252.

## A

We conduct a *de novo* review of the BIA's legal conclusions. *Omageh v. Ashcroft*, 288 F.3d 254, 258 (5th Cir. 2002). "As to questions of statutory interpretation, however, we owe substantial deference to an agency's construction of a statute that it administers." *Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984)); s*ee also De Fuentes v. Gonzales*, 462 F.3d 498, 502 (5th Cir. 2006) ("Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, we subject the BIA's construction of the law it administers to a deferential review."). Therefore, we review the BIA's

interpretation of § 212(c) under the two-step *Chevron* analysis.

Applying *Chevron*, we first ask "whether Congress has directly spoken to the precise question at issue. If Congress' intent is clear, the agency and the courts are bound to give effect to it." *De Fuentes*, 462 F.3d at 502. The precise question at issue in this case is what date of denial should be treated as the relevant date for determining whether Romero's time served in prison exceeds five years: Romero argues it is the date of initial denial on direct review in 2000 and the government argues that it is the date of subsequent denial following the reopening of the case in 2004.[2]

"The starting point in interpreting a statute is its language, for 'if the intent of Congress is clear, that is the end of the matter.'" *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (quoting *Chevron*, 467 U.S. at 842). In this case, the statute fails to clearly indicate the relevant date for determining whether an alien's time served in prison exceeds five years.[3] The former 8 U.S.C. § 1182(c) relevantly states,

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . . The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c).

---

[2] Romero does not argue, and we could find no cases indicating, that the regulations allowing a case to be reopened require that the reopened case be treated as if it were being considered at the time the case was initially heard. 8 C.F.R. § 1003.2.

[3] On this point, we respectfully disagree with the First Circuit, which found that the statute was clear and unambiguous that the relevant date was that of the BIA's subsequent denial))denying eligibility following the reopening of the case. *Pereira v. Gonzales*, 417 F.3d 38, 43 (1st Cir. 2005). Under similar facts, the Second Circuit did not reach the question of whether *Chevron* deference should be applied. *Edwards v. INS*, 393 F.3d 299, 308 (2d Cir. 2004).

Although the statute has long been held to apply to the deportation of lawful permanent residents who are presently in the United States, *see Ashby v. INS*, 961 F.2d 555, 557 n.2 (5th Cir. 1992), on its face, the statute seems only to apply to the exclusion of aliens returning to the United States from abroad. *See Byus-Narvaez v. INS*, 601 F.2d 879, 881 (5th Cir. 1979) (allowing § 212(c) eligibility because it was not contested by the INS, but stating, "By its terms section 212(c) provides no relief to an alien . . . who has never left the country and has never sought readmission subsequent to becoming deportable."). As a result, the language of the statute contemplates determining the eligibility of an alien attempting to enter the country and does not contemplate determining the eligibility of an alien presently in the country, let alone an alien presently serving a term of imprisonment. Because the statute itself does not contemplate that an alien may be in prison at the time of the eligibility determination, the statute fails to unambiguously answer whether time in prison should be determined on the date of initial denial or the date of subsequent denial.[4]

The statutory ambiguity is further emphasized by the government's argument in this case that the statute clearly compels deciding the term of imprisonment on the date "when the BIA issues its final decision." But in this case, there are two final decisions: one on direct review in 2000 and one after the case was reopened in 2004. *See Stone v. INS*, 514 U.S. 386, 394 (1995) (stating that grants of a motion to reconsider or reopen do not render the underlying decision nonfinal); *Guevara v. Gonzales*, 450 F.3d 173, 176 (5th Cir. 2006) (treating motions to reconsider and reopen as collateral

---

[4] It is worth noting that the last sentence of 8 U.S.C. § 1182(c), establishing the bar on applicants who have served more than five years in prison, was added in 1990, Immigration Act of 1990, Pub. L. No. 101-649 § 511(a), 104 Stat. 4978, 5052 (1990), after the BIA had established the practice of granting § 212(c) eligibility to aliens presently in the country. This legislative history suggests only that Congress may have intended that the five-year bar apply to aliens presently in the country. But this does not change the fact that the language chosen by Congress does not direct the BIA to a particular answer to the question of this case.

attacks on the BIA's decisions).  For the statute to be clear and unambiguous as to which date is relevant when determining the time served, the statute would have to settle this dilemma.  The statute does not address this issue, so we find that it is ambiguous as to the relevant date.

Because the statute is ambiguous, we move to step two of the *Chevron* analysis: whether the BIA's interpretation of the statute) ) that the relevant date for determining the length of imprisonment is the date of subsequent denial) ) is "'based on a permissible construction of the statute.'"  *Heaven v. Gonzales*, 473 F.3d 167, 175 (5th Cir. 2006) (quoting *Chevron*, 467 U.S. at 843).  We cannot say that the BIA's construction of the statute is impermissible.  Although we are sympathetic to Romero's contention that the BIA's construction of the statute creates inequities, namely by allowing Romero's § 212(c) eligibility to expire as a direct result of the BIA's erroneous interpretation of the statute in 2000, there is nothing in the statute or the policies served by the statutory framework clearly contradicting the BIA's construction.  The BIA may choose to prioritize the removal of aggravated felons over the protection of equities owed to those felons, and we are not in a position to question that policy choice.[5]  *Chevron*, 467 U.S. at  843 ("'The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.'") (quoting *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)).  Simply pointing to possible hardships created by the BIA's

---

[5] Although the Second Circuit did not reach the question of *Chevron*'s application, it did suggest that deference may not be due if the BIA's interpretation of the statute would cast doubt on the constitutionality of the statute.  *Edwards*, 393 F.3d at 308.  The Second Circuit's concern was that "an erroneous denial of the opportunity to apply for § 212(c) relief may constitute a due process violation."  *Id.*  This concern is not applicable in this circuit, where we have held that "eligibility for § 212(c) relief is not a liberty or property interest warranting due process protection . . . ."  *United States v. Lopez-Ortiz*, 313 F.3d 225, 231 (5th Cir. 2002).  Therefore, the BIA's construction need not be read as casting doubt on the constitutionality of the statute.

interpretation is not enough to demonstrate that the interpretation is unreasonable. Therefore, we defer to the BIA's interpretation of the statute that the relevant date for determining whether the alien's term of imprisonment exceeds five years is the date of the BIA's subsequent denial following the reopening of the case.

B

Romero also seeks relief under the equitable doctrine of *nunc pro tunc*, which allows actions of an adjudicating body, either a court or an agency, to be backdated to fix certain errors caused by an adjudicating body and not caused by the party seeking relief. The error asserted in this case is the BIA's initial denial of Romero's § 212(c) eligibility. There is no doubt that the BIA's initial denial of eligibility was in error, the question is whether it is the type of error that can be remedied by applying *nunc pro tunc*. We find that although this court does not have the authority to require that Romero's application be considered *nunc pro tunc*,[6] we still may remand to the BIA to allow the BIA to properly consider Romero's request.

Determining the proper scope of *nunc pro tunc* is complicated because in this case there are two types of adjudicating bodies, this court and the BIA, with two distinct forms of *nunc pro tunc* authority. Courts, sitting in equity, have traditionally applied *nunc pro tunc* to correct limited types of errors, namely clerical or other record keeping errors. *See Larin-Ulloa v. Gonzales*, 462 F.3d 456, 460 (5th Cir. 2006) ("A *nunc pro tunc* judgment is '[a] procedural device by which the record of a judgment is amended to accord with what the judge actually said and did, so that the record will be accurate.'") (citing Black's Law Dictionary 848 (7th ed. 1999)); *United States v. Hitchmon*, 587 F.2d

---

[6] On this point, we agree with the First Circuit) ) and therefore respectfully disagree with the Second Circuit. *Pereira*, 417 F.3d at 47; *Edwards v. INS*, 393 F.3d 299, 309 (2nd Cir. 2004).

1357, 1360 (5th Cir. 1979) ("Orders may be entered *nunc pro tunc* to the end that the record accurately reflect what was actually done on a previous date or to protect the parties from the consequences of delay by the court not attributable to any fault on their part."); *Recile v. Ward*, 496 F.2d 675, 680 (5th Cir. 1974) ("'The failure of a court to act, or its incorrect action, can never authorize a *nunc pro tunc* entry. If a court does not render judgment, or renders one which is imperfect or improper, it has no power to remedy any of these errors or omissions by treating them as clerical misprisions.'") (quoting Freeman on Judgments § 131).[7]

The BIA, on the other hand, has a long history of employing *nunc pro tunc* to backdate proceedings and orders where the error was not clerical or where there was no error at all. *Edwards v. INS*, 393 F.3d 299, 308 (citing *In re T----*, 6 I. & N. Dec. 410, 413 (BIA 1954); *In re A----*, 3 I. & N. Dec. 168, 172-73 (BIA 1948); *In re L----*, 1 I. & N. Dec. 1 (A.G. 1940)); *see also Patel v. Gonzales*, 432 F.3d 685, 694 (6th Cir. 2005) ("[T]he BIA may reasonably determine that a *nunc pro tunc* order is necessary to effectively implement the goals of the INA even where the DHS has not

---

[7] *See also Cuebas y Arredondo v. Cuebas y Arredondo*, 223 U.S. 376, 390 (1912) ("[A] decree [*nunc pro tunc*] presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court; or a decree in a cause which is under advisement when the death of a party occurs."); *Maksymchuk v. Frank*, 987 F.2d 1072, 1075 (4th Cir. 1993) ("[*Nunc pro tunc*] 'is a procedure whereby a determination previously made, but for some reason improperly entered or expressed, may be corrected and entered as of the original time when it should have been, or when there has been an omission to enter it at all.'") (citation omitted); *Transamerica Ins. Co. v. South*, 975 F.2d 321, 325 (7th Cir. 1992) ("[A] *nunc pro tunc* order is typically used to correct clerical or ministerial errors or a failure of the court to reduce to judgment what it stated orally or in an opinion."); *Crosby v. Mills*, 413 F.2d 1273, 1277 (10th Cir. 1969) ("An order may be entered *nunc pro tunc* to make the record speak the truth but it cannot supply an order which in fact was not previously made."); *Matthies v. Railroad Retirement Board*, 341 F.2d 243, 246 (8th Cir. 1965) ("'An entry *nunc pro tunc* is an entry made now of something which was previously done, to have effect as of the former date, the function, object, or purpose of such entry being to make the record speak the truth. . . . It is not, on the other hand, the function of such entry by a fiction to antedate the actual performance of an act which never occurred. . . .'") (citation omitted).

erred."). The BIA's use of *nunc pro tunc* is broader than the court's proper use and is based on a statutory commitment of authority to use back-dating measures where the BIA deems it appropriate. *Patel*, 432 F.3d at 694 ("It makes persuasive sense that the power of the BIA to enter *nunc pro tunc* orders is greater than that of federal courts. Unlike the BIA, Congress did not entrust the federal courts to implement the INA but rather to insure that the DHS and BIA act within their statutory authority under the INA."). As a result, the BIA has exercised a form of statutory *nunc pro tunc* separate and apart from the court's equitable *nunc pro tunc*.

Recognizing the courts' limited *nunc pro tunc* authority, the First Circuit rejected the request of an alien, similarly situated to Romero, applying for a § 212(c) waiver *nunc pro tunc*. *Pereira*, 417 F.3d at 47 (1st Cir. 2005) ("[N]unc pro tunc authority may only be used to correct inadvertent or clerical errors, and not to remedy 'a defect in a judgment, order or decree which expressed exactly the intention of the [agency] at the time when it was made.'") (quoting *Fierro v. Reno*, 217 F.3d 1, 5 (1st Cir. 2000)). The Second Circuit, on the other hand, used the courts' equitable *nunc pro tunc* authority to require that the BIA accept applications for § 212(c) waivers *nunc pro tunc*. *Edwards v. INS*, 393 F.3d 299, 309-10 (2nd Cir. 2004). In affording equitable *nunc pro tunc* relief to these aliens, the Second Circuit found that *nunc pro tunc* has broader applications in the context of immigration law than in other contexts, and that this broader form of *nunc pro tunc* is available to both the BIA and the courts. *Id.* at 309 n.12.

Like the First Circuit, we do not believe that the courts' *nunc pro tunc* authority is any broader in the context of immigration law than it is in other contexts.[8] Therefore, we join the First

___

[8] This is to suggest only that this court's equitable *nunc pro tunc* authority does not reach these circumstances. This is not meant to suggest that this court may never order the BIA to backdate proceedings. *See, e.g.*, *Batanic v. INS*, 12 F.3d 662, 668 (7th Cir. 1993) (ordering an

Circuit in holding that this court's equitable *nunc pro tunc* authority cannot be used to fix the type of error that occurred when the BIA erroneously denied Romero's initial application for a § 212(c) waiver.

Our finding that this court lacks the equitable authority to order *nunc pro tunc* proceedings does not end the analysis. Although the BIA is not required to allow *nunc pro tunc* proceedings, it is does have broad discretion to allow *nunc pro tunc* proceedings in two well defined situations: "(1) where the only ground of deportability or inadmissibility would thereby be eliminated; and (2) where the alien would receive a grant of adjustment of status in connection with the grant of any appropriate waivers." *Patel*, 432 F.3d at 693 (citing *In re Felipe Garcia-Linares*, 21 I. & N. Dec. 254, 259 (BIA 1996); *In re Roman*, 19 I. & N. Dec. 855, 857 (BIA 1988)).

In this case, the BIA did not make a finding as to whether Romero falls into one of these situations. In its 2004 denial of Romero's eligibility, the BIA did not even address Romero's request for *nunc pro tunc* relief even though Romero specifically requested such relief in his brief to the BIA. Rather, the BIA adopted the decision of the IJ, which incorrectly applied *nunc pro tunc*. The IJ stated, "Nunc pro tunc consideration does not undo the fact that the respondent as of now and before approval of his 212(c) waiver application has served 6 years in prison for an aggravated felony conviction." This is incorrect. Allowing Romero to file his application *nunc pro tunc* would, in fact, reinstate his § 212 eligibility. It was a mistake of law for the IJ to decide otherwise, and it was,

---

alien's expired rights to be reinstated as a matter of statutory interpretation, in order to avoid the constitutional problem created by allowing an alien's rights to expire as a result an improper denial of the alien's right to counsel).

-11-

therefore, a mistake of law for the BIA to adopt that decision of the IJ.[9]

Because the BIA erred by adopting the IJ's mistaken belief that a *nunc pro tunc* application would not make Romero eligible for relief, the BIA improperly applied its own *nunc pro tunc* authority. Accordingly, we remand the case to the BIA to address whether the BIA's *nunc pro tunc* authority is available and, if so, whether Romero should be allowed to submit a *nunc pro tunc* application for a § 212(c) waiver.

### III

In summary, we hold that the BIA may determine the length of the alien's term of imprisonment by using the date of the BIA's subsequent denial following the reopening of the case. The statutory language of the former 8 U.S.C. § 1182(c) is ambiguous as to the relevant date used to determine the time served in prison, and we cannot say that the BIA's construction is impermissible. Further, this court lacks the equitable authority to order that Romero's application be accepted *nunc pro tunc*. The BIA, though, has historically exercised a broader *nunc pro tunc* authority than the courts. In this case, the BIA misapplied that authority, so we REMAND to allow the BIA to properly consider Romero's request that the BIA accept his application for a § 212(c) waiver *nunc pro tunc*.

---

[9] The BIA has yet to address whether Romero's application falls into one of the two situations where *nunc pro tunc* is appropriate and the parties have not briefed that issue here. Therefore, we express no opinion as to whether the BIA should apply *nunc pro tunc* to claims like Romero's. We hold only that if *nunc pro tunc* is allowed, then it could be used to reinstate Romero's eligibility.

-12-