**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 8, 2011

Lyle W. Cayce
Clerk

No. 09-60847

CHADWORTH RYAN DEWAYNE ROBERTSON-DEWAR

Petitioner

v.

ERIC HOLDER, JR., ATTORNEY GENERAL OF THE UNITED STATES

Respondent

Petition for Review of an Order
of the Board of Immigration Appeals

Before GARWOOD, ELROD, and SOUTHWICK, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner Chadworth Ryan Dewayne Robertson-Dewar was born in Jamaica on June 28, 1980. He was admitted into the United States in February 1993 as a lawful permanent resident when he came to live with his father, Owen Dewar. In October of that year, Owen Dewar was naturalized as a United States citizen. On January 10, 1996, Owen Dewar submitted an application for a certificate of citizenship on his son's behalf. He intended to apply for citizenship for Robertson-Dewar under section 322 of the Immigration and Nationality Act (INA) as it existed at that time. *See* 8 U.S.C. § 1433 (1994 ed.). The application was still unadjudicated when in 2002 Robertson-Dewar was convicted in Pennsylvania of several counts of sexual abuse of children based on his

No. 09-60847

dissemination of child pornography, possession of child pornography, and criminal use of a communications facility. On December 14, 2006, United States immigration authorities served Robertson-Dewar with a notice to appear in removal proceedings. Several days later, on December 18, 2006, the United States Citizenship and Immigration Services (CIS) denied his 1996 application for a certificate of citizenship without explaining its nearly eleven year delay in ruling on the application. Under former INA section 322, an application for a citizenship certificate was required to be filed on INS Form N-400. The application that Owen Dewar filed in 1996 was on INS Form N-600. That form was intended to be used by someone filing on his own behalf who is claiming to already be a citizen. When CIS denied Robertson-Dewar's citizenship application in 2006, the order analyzed his application under now repealed INA section 321, which requires applicants to use Form N-600. Section 321 conferred citizenship from birth to children born outside of the United States to alien parents who met certain requirements. *See* 8 U.S.C. § 1432 (repealed 2000). Robertson-Dewar does not argue that he was eligible for citizenship under that statute.

In January 2007, United States immigration authorities issued a superseding notice to appear that charged Robertson-Dewar with removability for having been convicted of an offense that qualified as an aggravated felony. In April 2007, petitioner filed a motion for termination of the removal proceedings, in which he argued that the 1996 application was unreasonably held for over 10 years without adjudication and was adjudicated under the incorrect statute. In response, counsel for the United States Department of Homeland Security (DHS) filed a non-opposition to Robertson-Dewar's motion for termination, in which it stated that "the DHS does believe that Respondent facially meets" the requirements for citizenship of INA section 322 as it existed when Owen Dewar filed the application. DHS requested that the immigration

No. 09-60847

judge grant Robertson-Dewar's motion to terminate removal proceedings without prejudice to its ability to initiate new proceedings if he failed to complete the citizenship process "within the next several years" or if he committed further crimes. In May 2007, the Immigration Judge granted the motion in accordance with DHS's request.

Despite the statements DHS made in its previous non-opposition letter, Robertson-Dewar was charged in November 2007 under a new notice to appear. The second notice to appear was apparently prompted by the petitioner's filing of an application to replace his permanent resident card, which he alleges was necessary because he was not provided with any identification upon his release from immigration custody in May 2007. Robertson-Dewar filed another motion to terminate the removal proceedings. DHS did not agree to termination of the removal proceedings, and in January 2009 the Immigration Judge entered a decision ordering Robertson-Dewar's deportation. The Immigration Judge found that res judicata was not available to preclude the order of removal.

The petitioner also filed a writ of mandamus in the United States District Court for the Western District of Texas seeking to compel CIS to naturalize him. In February 2009, the district court dismissed Robertson-Dewar's mandamus application without prejudice and vacated CIS's 2006 denial of his application for a certificate of citizenship. The court determined that Owen Dewar had submitted an application for naturalization for his son under 8 U.S.C. § 1433 (INA section 322) as it existed in 1996. Under that statute, Robertson-Dewar was required to have been under 18 both when the application was filed and when he was admitted to citizenship, and thus the court concluded that Robertson-Dewar was no longer eligible for citizenship under the statute. The court additionally held that the CIS's denial of Robertson-Dewar's citizenship application in December 2006 was in violation of 8 U.S.C. § 1429, which bars consideration of certain naturalization applications when the applicant is the

subject of a pending removal proceeding.  The district court considered whether it could order citizenship to be adjudicated under Robertson-Dewar's original application *nunc pro tunc*, but it concluded that since Robertson-Dewar was still the subject of a pending removal proceeding, it did not have that authority. *Robertson-Dewar v. Mukasey*, 599 F. Supp. 2d 772 (W.D. Tex. 2009).  No appeal was taken from this decision.

Petitioner appealed the Immigration Judge's January 2009 decision to the Board of Immigration Appeals (BIA).  In May 2009 the BIA remanded the case to the Immigration Judge and requested a full decision which included discussion of Robertson-Dewar's claim to citizenship.  The Immigration Judge on June 26, 2009 again entered an order of removal.  The Immigration Judge specifically concluded that the government's failure to timely adjudicate Robertson-Dewar's citizenship application cost him his claim to citizenship.  On appeal, the BIA in October 2009 held that the Immigration Judge correctly determined that Robertson-Dewar was removable, but it did not rule on the issues of the government's delay in adjudicating his application or the government's interpretation of the applicable statutes because the BIA determined that it lacked jurisdiction over applications for naturalization.  The BIA thus affirmed the decision of the Immigration Judge.

Robertson-Dewar filed a timely petition for review of the BIA decision in this court.  He then filed a timely motion for reconsideration by the BIA in which he argued that the BIA should declare him a United States national because of his past service in the military.  The BIA denied the motion in January 2010.

## DISCUSSION

### I. Equitable Estoppel

Robertson-Dewar raises two issues on appeal.  He first argues that the government should be equitably estopped from deporting him because he should have been granted citizenship based on the application his father filed before he

No. 09-60847

turned eighteen. The Board of Immigration Appeals did not have jurisdiction to consider this claim, thus we review it *de novo*. *See Romero-Rodriguez v. Gonzales*, 488 F.3d 672, 675 (5th Cir. 2007); *In re Hernandez-Puente*, 20 I. & N. Dec. 335, 338-39 (BIA 1991).

Section 322 of the Immigration and Naturalization Act as it existed in 1996 stated that "[t]he Attorney General shall issue such a certificate of citizenship upon proof to the satisfaction of the Attorney General that . . . [a]t least one parent is a citizen of the United States," "[t]he child is physically present in the United States pursuant to a lawful admission," and "[t]he child is under the age of 18 years and in the legal custody of the citizen parent." 8 U.S.C. § 1433(a) (1994 ed.). Robertson-Dewar contends that the language of the statute creates a ministerial duty that the Attorney General is required to perform if the statute's qualifications are met and thus the government should not be permitted to deport him because of its failure to timely perform a mandatory duty.

Courts have been exceedingly reluctant to grant equitable estoppel against the government. *See Office of Pers. Mgmt. v. Richmond*, 110 S.Ct. 2465, 2469-72 (1990) (noting that the Supreme Court has "reversed every finding of estoppel that we have reviewed"). If estoppel against the government is available, the party seeking estoppel must establish five things: (1) affirmative misconduct by the government, (2) that the government was aware of the relevant facts and (3) intended its act or omission to be acted upon, (4) that the party seeking estoppel had no knowledge of the relevant facts and (5) reasonably relied on the government's conduct and as a result of his reliance, suffered substantial injury. *United States v. Bloom*, 112 F.3d 200, 205 (5th Cir. 1997). "[T]o state a cause of action for estoppel against the government, a private party must allege more than mere negligence, delay, inaction, or failure to follow an internal agency guideline." *Fano v. O'Neill*, 806 F.2d 1262, 1265 (5th Cir. 1987). "Affirmative

No. 09-60847

misconduct requires an affirmative misrepresentation or affirmative concealment of a material fact by the government." *Linkous v. United States*, 142 F.3d 271, 278 (5th Cir. 1998) (internal quotations marks omitted).

We hold that Robertson-Dewar is not entitled to equitable estoppel against the government to terminate his deportation proceeding. Although we are not called upon to decide whether a court can ever grant equitable estoppel against the government, we note that the rarity of this remedy means that the burden that a petitioner must meet is very high. Robertson-Dewar has not met this burden. Although his current circumstances are unfortunate, he has not shown affirmative misconduct by the government that goes beyond mere negligence or delay. He has no evidence that the government delayed ruling on his application with the intent of not acting therein until after he had aged out of the statute.[1] Additionally, we question whether Robertson-Dewar reasonably relied on the government's conduct. He admits that he was told in 1999 that he was not a citizen, and neither he nor his father adequately followed up on the naturalization application. Accordingly, he is not entitled to the remedy of equitable estoppel to preclude his deportation.[2]

## II.

## Remand To Board of Immigration Appeals

---

[1] Robertson-Dewar repeatedly emphasizes the government's eleven year delay in processing his application; however, the statute makes clear that the child must be under the age of eighteen to meet its qualifications. Robertson-Dewar aged out of the statute thirty months after his father filed an application, so the relevant delay was two and a half years rather than eleven. However, we do not question that two and a half years is an unreasonable delay.

[2] The government's brief raises the issue of whether Robertson-Dewar even met the requirements of citizenship in 1996 due to the fact that his parents were never married as well as alleged deficiencies in the application filed by his father. Because we find that Robertson-Dewar does not meet the requirements of equitable estoppel even if he was entitled to citizenship in 1996, we do not reach this issue.

No. 09-60847

Robertson-Dewar's second argument on appeal is that the BIA erred in holding that it did not have jurisdiction to terminate the removal proceedings to give Robertson-Dewar an opportunity to pursue his citizenship claim. We review *de novo* the BIA's determination as to a purely legal question, but this court gives "substantial deference to an agency's construction of a statute that it administers" pursuant to the Supreme Court's decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 104 S.Ct. 2778 (1984). *Romero-Rodriguez*, 488 F.3d at675 (internal quotation marks and citations omitted).

In *In re Hildalgo*, the BIA ruled that it has jurisdiction to terminate removal proceedings only where it has received "some form of affirmative communication from the DHS" regarding the alien's prima facie eligibility for naturalization. 24 I. & N. Dec. 103, 105-07 (BIA 2007). The *Hildalgo* decision relied on 8 C.F.R. § 1239.2(f) which requires an alien to have "established prima facie eligibility for naturalization" as well as an underlying matter involving "exceptionally appealing or humanitarian factors" in order for an immigration judge to terminate removal proceedings. In 2007, DHS issued a non-opposition to his motion to terminate removal proceedings in which it stated that it believed that Robertson-Dewar "facially meets" the requirements of section 322. Robertson-Dewar argues that DHS's statement meets the standard of an "affirmative communication" such that the BIA had authority to terminate Robertson-Dewar's removal proceeding. He contends that if removal proceedings are terminated, even though he is too old to qualify for citizenship under section 322, he may still be granted citizenship by *nunc pro tunc* relief. However, as the district court pointed out, no such *nunc pro tunc* relief can be awarded until removal proceedings are terminated because 8 U.S.C. § 1429 prohibits consideration of a naturalization application while removal proceedings are pending.

7

No. 09-60847

This court does not have authority to grant *nunc pro tunc* relief for this type of error. "Courts, sitting in equity, have traditionally applied *nunc pro tunc* to correct limited types of errors, namely clerical or other record keeping errors." *Romero-Rodriguez*, 488 F.3d at 677. Any error in this case, even if there is any, is not of this limited type. The petitioner is not in fact asking this court to grant him citizenship *nunc pro tunc*. He is instead asking the court to remand to the BIA with instructions that they do have jurisdiction to terminate removal proceedings based on DHS's affirmative representation in 2007. If removal proceedings are then terminated, Robertson-Dewar must petition to USCIS for *nunc pro tunc* relief that will grant him citizenship under the fiction that he is still under 18 and thus qualifies under section 322 as it was written in 1996.

We hold that Robertson-Dewar has not established prima facie eligibility for naturalization and thus affirm the BIA's order. Under the BIA's interpretation of the regulations, the only way an alien can establish prima facie eligibility is through an "affirmative communication regarding [the alien's] prima facie eligibility for naturalization from the DHS"—the agency with exclusive jurisdiction to make such determinations. *Hidalgo*, 24 I. & N. Dec. at 108-09; *see also Saba-Bakare v. Chertoff*, 507 F.3d 337, 341 (5th Cir. 2007) ("[O]nly an affirmative communication from [DHS] may establish prima facie eligibility.") The affirmative statement in the non-opposition submitted by the DHS does indicate that the agency at that time believed Robertson-Dewar was eligible for naturalization. The agency subsequently changed its position, however. After reinitiating removal proceedings, DHS declined to represent to the Immigration Judge or to the BIA that Robertson-Dewar was prima facie eligible for naturalization. This precluded him from establishing prima facie eligibility, as that determination is the sole province of DHS. Regardless of the reason for the agency's change in position—and certainly, in this case, no reason has been offered—the BIA did not have authority to look beneath or second-

No. 09-60847

guess DHS's determination. *See Hidalgo*, 24 I. & N. Dec. at 106 (holding that the BIA does not "have authority to determine . . . prima facie eligibility for naturalization in order to terminate removal proceedings"). As such, we agree with the Board of Immigration Appeals' decision that it did not have jurisdiction to terminate Robertson-Dewar's removal proceedings.

## CONCLUSION

For the foregoing reasons, we DENY Robertson-Dewar's petition for review of the decision of the Board of Immigration Appeals.[3]

DENIED.

---

[3] Robertson-Dewar relies on the opinion in *Harriott v. Ashcroft*, 277 F. Supp. 2d 538 (E.D. Pa. 2003). We have carefully considered that opinion, which is not binding on us, and respectfully decline to follow it. And, we assume arguendo that the same unpublished "INS internal guidelines" for processing § 322 applications as are referenced in *Harriott* at 543 n.8, were applicable to the § 322 application here.