# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 18, 2016

Lyle W. Cayce
Clerk

No. 14-60693

———————

ORLANDO GUTIERREZ, also known as Orlando Gutierrez Martinez,

     Petitioner

v.

LORETTA LYNCH, U. S. ATTORNEY GENERAL,

     Respondent

———————

Petition for Review of Order of
the Board of Immigration Appeals

———————

Before DAVIS, JONES, and GRAVES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

An Immigration Judge ordered that Petitioner Orlando Gutierrez be removed from the United States.[1] Gutierrez appealed the Immigration Judge's removal order to the Board of Immigration Appeals ("BIA"), which dismissed the appeal.

Gutierrez now petitions this Court for review of the BIA's order. He claims that he is not subject to removal because he became a lawful permanent resident before he turned eighteen, and thereby automatically became a

---

[1] *See* 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i).

No. 14-60693

United States citizen under the Child Citizenship Act of 2000 ("CCA").[2] We disagree, and therefore deny the petition.

I.

The CCA provides that a child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:

(1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization;

(2) The child is under the age of eighteen years; and

(3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.[3]

Gutierrez was born in Colombia on March 29, 1983 and entered the United States with his father. Gutierrez's father became a naturalized United States citizen on July 25, 1997. Gutierrez then applied for, and ultimately obtained, lawful permanent resident status. Thus, Gutierrez satisfies several of the CCA's prerequisites for citizenship.

The crucial question, however, is *when* Gutierrez became a lawful permanent resident. If he became a lawful permanent resident *after* he turned eighteen, then he is ineligible for citizenship under the CCA.[4] If, instead, he

---

[2] *Id*. § 1431.

[3] *Id*.

[4] *See Gonzelez-Lupercio v. Lynch*, 613 F. App'x 443, 444-45 (5th Cir. 2015) ("Since Gonzalez failed to establish that he was admitted for lawful permanent residence while under the age of eighteen, the BIA did not err in finding that he did not satisfy the statutory requirements for derivative citizenship." (citing *Pena v. Holder*, 521 F. App'x 347, 348 (5th Cir. 2013))).

No. 14-60693

became a lawful permanent resident *before* he turned eighteen, then he automatically became a citizen under the CCA, and he is not subject to removal proceedings.

Gutierrez submitted his application for lawful permanent resident status on October 23, 1997, before he turned eighteen. On May 30, 2000, Gutierrez, then seventeen years old, met with an INS officer for his adjustment of status interview. During that interview, the INS officer signed an I-89 Form which certified that Gutierrez was entitled to a permanent resident card.

However, United States Citizenship & Immigration Services ("USCIS") did not formally approve Gutierrez's application and issue his permanent resident card until March 15, 2004, long after Gutierrez's eighteenth birthday.

We must therefore decide whether Gutierrez became a lawful permanent resident in 2000, when the INS officer signed the I-89 Form certifying that Gutierrez was eligible for a permanent resident card, or in 2004, when USCIS formally approved his application and actually issued the card.

## II.

We agree with the BIA that Gutierrez became a permanent resident in 2004, when USCIS formally approved his application. 8 U.S.C. § 1255(b) provides that an alien becomes a lawful permanent resident on "the date the order of the Attorney General approving the application for the adjustment of status is made."[5] The I-89 Form that the INS officer certified in 2000 was not an "order of the Attorney General" approving Gutierrez's application for

---

[5] 8 U.S.C. § 1255(b). *Accord* 8 C.F.R. § 1245.2(a)(5)(ii) ("If the application is approved, the applicant's permanent residence shall be recorded as of the date of the order approving the adjustment of status.").

No. 14-60693

adjustment of status.[6] Thus, Gutierrez did not become a lawful permanent resident in 2000. Instead, Gutierrez became a lawful permanent resident in 2004, after his eighteenth birthday. Gutierrez is therefore not entitled to citizenship under the CCA, and he is subject to removal proceedings.

### III.

Gutierrez argues in the alternative that the United States is equitably estopped from removing him from the country because it unreasonably delayed issuing his lawful permanent resident card. He emphasizes that the INS officer informed Gutierrez at his adjustment interview that Gutierrez would have his permanent resident card in three months, yet USCIS delayed four years before officially issuing his card. INS committed various bureaucratic errors when processing his fingerprint and criminal history checks, which needlessly exacerbated the delay. Gutierrez and his parents diligently followed up with INS regarding the status of his adjustment application, yet INS nevertheless failed to timely approve his application.

We are sympathetic to Gutierrez's plight. The United States's unreasonable delay cost Gutierrez the opportunity to obtain citizenship under the CCA and thereby avoid removal.

However, we cannot estop the United States on the facts of this case. We are bound by our published opinion in *Robertson-Dewar v. Holder*,[7] which rejected a similar equitable estoppel claim. Robertson-Dewar, like Gutierrez, claimed that he became a lawful permanent resident before his eighteenth

---

[6] We therefore disagree with the dissent's assertion that the I-89 Form "ha[s] the effect of conferring [lawful permanent resident] status" under the facts of this case.

[7] 646 F.3d 226 (5th Cir. 2011).

4

birthday and thereby became eligible for citizenship.[8] However, USCIS inexplicably waited eleven years before ruling on Robertson-Dewar's application for a certificate of citizenship.[9] As a result of its extreme delay, the United States had still not adjudicated Robertson-Dewar's application by the time it initiated removal proceedings against him.[10]

Robertson-Dewar argued that "the government should be equitably estopped from deporting him because he should have been granted citizenship based on the application his father filed before he turned eighteen."[11] He claimed that "the government should not be permitted to deport him because of its failure to timely perform a mandatory duty."[12]

We disagreed. We noted that "[c]ourts have been exceedingly reluctant to grant equitable estoppel against the government."[13] "'[T]o state a cause of action for estoppel against the government, a private party must allege more than mere negligence, delay, inaction, or failure to follow an internal agency guideline.'"[14] Instead, the petitioner must establish, among other things, "affirmative misconduct by the government."[15]

We concluded that Robertson-Dewar failed to show "affirmative misconduct by the government that goes beyond mere negligence or delay."[16] Because Robertson-Dewar presented no "evidence that the government delayed ruling on his application with the intent of not acting therein until he

---

[8] *Id.* at 227, 229.

[9] *Id.* at 227.

[10] *Id.*

[11] *Id.* at 229.

[12] *Id.*

[13] *Id.* (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990)).

[14] *Id.* (quoting *Fano v. O'Neill*, 806 F.2d 1262, 1265 (5th Cir. 1997)) (brackets and internal quotation marks omitted).

[15] *Id.* (citing *United States v. Bloom*, 112 F.3d 200, 205 (5th Cir. 1997)).

[16] *Id.* at 230.

No. 14-60693

had aged out of the statute," he was "not entitled to the remedy of equitable estoppel to preclude his deportation."[17]

In all relevant respects, *Robertson-Dewar* is indistinguishable from the instant case. There is no evidence that the United States purposefully "delayed ruling on [Gutierrez's] application with the intent of not acting therein until he had aged out of the statute,"[18] so there is no evidence of affirmative misconduct. We must therefore reject Gutierrez's equitable estoppel argument.

PETITION DENIED.[19]

---

[17] *Id.*

[18] *See id.*

[19] The dissent would also "conclude that Gutierrez is entitled to equitable tolling." However, Gutierrez does not raise an equitable tolling argument in his brief. "This court 'will not raise and discuss legal issues that [an appellant] has failed to assert.'" *Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007) (quoting *Brinkmann v. Abner*, 813 F.2d 744, 748 (5th Cir. 1987)).

No. 14-60693

GRAVES, Circuit Judge, dissenting.

Because I would grant the petition for review, I respectfully dissent.

Orlando Gutierrez began residing in the United States with his parents and siblings in February of 1985 when he was approximately two years old. Gutierrez was brought to the United States by his father, who was then a Lawful Permanent Resident (LPR). His father was naturalized on July 25, 1997, when Gutierrez was fourteen years old. His father filed an application for adjustment of status for Gutierrez just a few months later on October 23, 1997. Gutierrez attended his adjustment interview on May 30, 2000, when he was seventeen years and two months old. At the hearing, both Gutierrez and his sister were told they would have their LPR cards within three months. The sister received her card approximately two months later. Gutierrez did not receive his card for nearly four years. Then in 2013, Gutierrez was placed in removal proceedings as a LPR for a conviction earlier that year.

Gutierrez asserts that the BIA erred in its conclusion that he did not obtain derivative citizenship under the Child Citizenship Act (CCA) because his application for permanent residence was not approved until March 15, 2004, which was after his eighteenth birthday. Specifically, Gutierrez asserts that, for purposes of the CCA, the certification of the I-89 form was sufficient to demonstrate that he was a lawful permanent resident prior to his eighteenth birthday and allowed him to automatically acquire citizenship.

Under the CCA:

A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:

(1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.

7

No. 14-60693

(2) The child is under the age of eighteen years.

(3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

8 U.S.C. § 1431(a).

The only issue is whether Gutierrez was residing pursuant to a lawful admission for permanent residence prior to his eighteenth birthday. Gutierrez asserts that he was because his application for adjustment was approved on May 30, 2000, when he was still seventeen years old. The BIA concluded that Gutierrez did not derive citizenship until March 14, 2004, under 8 C.F.R. § 1245.2(a)(5)(ii).

There is no authority to indicate that the INS certification of Gutierrez's I-89 form does not have the effect of conferring LPR status for the limited purpose of complying with section 1431(a)(3) when, as here, the government misrepresented to Gutierrez that he would receive his permanent resident card within three months, the government misrepresented other reasons for the delay and concealed the actual reason for the delay, the petitioner diligently and timely did everything he could do, and the delay was entirely the fault of the government.

Under 8 U.S.C. § 1255(a), Gutierrez was eligible to have his status adjusted by showing: "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). Gutierrez was eligible upon application and, from that point on, the process was basically a procedural formality. Further, as Gutierrez asserts,

the DHS officer certified on May 30, 2000, that he was entitled to receive his LPR card.

However, even if the INS certification of Gutierrez's I-89 form could not have the effect of conferring LPR status for the limited purpose of complying with section 1431(a)(3), I would conclude that Gutierrez is entitled to equitable tolling. The record here establishes that Gutierrez clearly demonstrated the due diligence necessary to invoke equitable tolling.

This court has said that:

> As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules, but we draw on general principles to guide when equitable tolling is appropriate. We must be cautious not to apply the statute of limitations too harshly.

*Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999).

On habeas, this court has applied equitable tolling where a district court order unintentionally misled a prisoner. *United States v. Patterson*, 211 F.3d 927, 931 (5th Cir. 2000).

In immigration cases, courts have applied equitable tolling to statutory deadlines. *See Iavorski v. INS*, 232 F.3d 124 (2d Cir. 2000) (filing deadline may be equitably tolled, but petitioner did not exercise due diligence); *Borges v. Gonzales*, 402 F.3d 398, 406 (3d Cir. 2005) (180-day limitation for reopening in absentia order of removal could be tolled due to counsel's fraud); *Varela v. INS*, 204 F.3d 1237 (9th Cir. 2000) (tolling of filing deadline for motion to reopen after legal assistant incorrectly assured alien he did not have to leave United States before nine-month voluntary departure deadline) *superseded by statute as stated in Granados-Oseguera v. Mukasey*, 546 F.3d 1011 (9th Cir. 2008); and

*Lopez v. INS*, 184 F.3d 1097, 1100 (9th Cir. 1999) (180-day filing deadline provided in 8 U.S.C. § 1252b(c)(3) is subject to equitable tolling).

Here, Gutierrez was required by statute to obtain LPR status. He applied for it years in advance – as soon as his father was naturalized. He showed up for his interview. The government misrepresented to Gutierrez that he would receive his permanent resident card within three months. The government also made other affirmative misrepresentations as to the reason for the delay in response to the repeated attempts by the Gutierrez family to resolve the matter and concealed the fact that the paperwork was misfiled.[1]

Alternatively, Gutierrez asserts that the doctrine of equitable estoppel bars the government from removing him and denying his citizenship claim.

A party seeking equitable estoppel against the government must establish:

> (1) affirmative misconduct by the government, (2) that the government was aware of the relevant facts and (3) intended its act or omission to be acted upon, (4) that the party seeking estoppel had no knowledge of the relevant facts and (5) reasonably relied on

---

[1] Gutierrez's mother testified that when his card did not arrive, she went to the Dallas INS office nine or ten times and was given various excuses about the officer in charge of the case having gotten married, being away on a honeymoon and leaving things in "disarray." She also stated that an INS official finally told her not to return to the INS office or security would eject her. Gutierrez's father also made repeated inquiries with the INS.

Gutierrez's mother also testified regarding letters they had sent to the Governor and a United States Senator attempting to get the matter resolved. In the letter, Gutierrez's father stated that INS officials had said the delay was a result of waiting for an FBI rap sheet based on Gutierrez's fingerprints.

Gutierrez's mother further testified that she ultimately got into contact with an INS official in an out-of-state office who investigated Gutierrez's case and discovered a "huge error," which was that his paperwork had been "mixed up" with his sister's papers and filed in her folder. Gutierrez's mother testified that the official forwarded the information to the Dallas INS office, which made a new appointment for Gutierrez and that shortly thereafter Gutierrez received his permanent resident card in the mail.

No. 14-60693

the government's conduct and as a result of his reliance, suffered substantial injury.

*Robertson-Dewar v. Holder*, 646 F.3d 226, 229 (5th Cir. 2011).

The majority concludes that it cannot estop the United States here under *Robertson-Dewar*, which it says is indistinguishable. I disagree because *Robertson-Dewar* is distinguishable. Unlike Gutierrez, Robertson-Dewar submitted the wrong form, offered no evidence that a DHS officer had certified he was entitled to citizenship and offered nothing other than the delay to satisfy the prongs required for equitable estoppel to apply. Here, Gutierrez submitted the correct form, offered evidence that a DHS officer had certified he was entitled to LPR status and he can satisfy the applicable prongs, as discussed below. Further, this court specifically acknowledged in *Robertson-Dewar* that it was "not called upon to decide whether a court can ever grant equitable estoppel against the government." *Robertson-Dewar*, 646 F.3d at 230.

With regard to Gutierrez, under the first prong, "[a]ffirmative misconduct requires an affirmative misrepresentation or affirmative concealment of a material fact by the government." *Linkous v. United States*, 142 F.3d 271, 278 (5th Cir. 1998) (internal marks and citation omitted). In this case, the government misrepresented to Gutierrez that he would receive his permanent resident card within three months. He did not receive his card within three months. The government also made other affirmative misrepresentations as to the reason for the delay in response to the repeated attempts by the Gutierrez family to resolve the matter, i.e., the officer got married, went on a honeymoon, fingerprints, etc. Moreover, the government affirmatively concealed the fact that Gutierrez's paperwork was misfiled.

11

No. 14-60693

Under prong two, the government was aware of the relevant facts because the Gutierrez family repeatedly contacted them about the delay. There was correspondence, forms and testimony to support this contact. Further, any misfiling was done by the government.

Under prong three, the government intended its act or omission to be acted upon because the Gutierrez family was instructed to just wait. The sister's card indeed arrived within three months. Upon additional inquiries as to the reason for the delay with Gutierrez's permanent resident card, the government then instructed the Gutierrez family to keep waiting and eventually told them to stop returning to the office.

Under prong four, the record indicates that Gutierrez had no knowledge of the relevant facts until contacting an out-of-state office.

Under prong five, Gutierrez had no choice but to rely on the government's conduct, thus, his reliance was reasonable. This is supported by the fact that he eventually received his permanent resident card. He suffered substantial injury in that there is an order for his removal and he has been denied citizenship.

Thus, I would conclude that in a case such as this where the government provided a time-frame, repeatedly instructed Gutierrez to wait and provided numerous excuses despite the diligent effort of the Gutierrez family, the unreasonableness of the delay combined with the affirmative misrepresentations and concealment of the actual reason for the delay warrant the application of equitable estoppel.

For these reasons, I would grant the petition for review and I respectfully dissent.