W. EUGENE DAVIS, Circuit Judge:
An Immigration Judge ordered that Petitioner Orlando Gutierrez be removed from the United States.[1] Gutierrez appealed the Immigration Judge’s removal order to the Board of Immigration Appeals (“BIA”), which dismissed the appeal.
Gutierrez now petitions this Court for review of the BIA’s order. He claims that he is not subject to removal because he became a lawful permanent resident before he turned eighteen, and. thereby automatically became a United States citizen under the Child Citizenship Act of 2000 (“CCA”).[2] We disagree, and therefore deny the petition.
I.
The CCA provides that a child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:
(1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization;
(2) The child is under the age of eighteen years; and
(3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.[3]
Gutierrez was born in Colombia on March 29, 1983 and entered the United States with his father. Gutierrez’s father became a naturalized United States citizen on July 25, 1997. Gutierrez then applied for, and ultimately obtained, lawful permanent resident status. Thus, Gutierrez satisfies several of the CCA’s prerequisites for citizenship.
The crucial question, however, is when Gutierrez became a lawful permanent resident. If he became a lawful permanent resident after he turned eighteen, then he is ineligible for citizenship under the CCA.[4] If, instead, he became a lawful per *181 manent resident before he turned eighteen, then he automatically became a citizen under the CCA, and he is not subject to removal proceedings.
Gutierrez submitted his application for lawful permanent resident status on October 23, 1997, before he turned eighteen. On May 30, 2000, Gutierrez, then seventeen years old, met with an INS officer for his adjustment of status interview. During that interview, -the INS officer signed an I-89 Form which certified that Gutierrez was entitled to a permanent resident card.
However, United States Citizenship & Immigration Services (“USCIS”) did not formally approve Gutierrez’s application and issue his permanent resident card until March 15, 2004, long after Gutierrez’s eighteenth birthday.
We must therefore decide whether Gutierrez became a lawful permanent resident in 2000, when the INS officer signed the 1-89 Form certifying that Gutierrez was eligible for a permanent resident card, or in 2004, when USCIS formally approved his application and actually issued the card.
II.
We agree with the BIA that Gutierrez became a permanent resident in 2004, when USCIS formally approved his application. 8 U.S.C. § 1255(b) provides that an alien becomes a lawful permanent resident on “the date the order of the Attorney General approving the application for the adjustment of status is made.”[5] The 1-89 Form that the INS officer certified in 2000 was not an “order of the Attorney General” approving Gutierrez’s application for adjustment of status.[6] Thus, Gutierrez did not become a lawful permanent resident in 2000. Instead, Gutierrez became a lawful permanent resident in 2004, after his eighteenth birthday. Gutierrez is therefore not entitled to citizenship under the CCA, and he is subject to removal proceedings.
III.
Gutierrez argues in the alternative that the United States is equitably es-topped from removing him from the country because it unreasonably delayed issuing his lawful permanent resident card. He emphasizes that the INS officer informed Gutierrez at his adjustment interview that Gutierrez would have his permanent resident card in three months, yet USCIS delayed four years before officially issuing his card. INS committed various bureaucratic errors when processing his fingerprint and criminal history checks, which needlessly exacerbated the delay. Gutierrez and his parents diligently followed up with INS regarding the status of his adjustment application, yet INS nevertheless failed to timely approve his application.
We are sympathetic to Gutierrez’s plight. The United States’s unreasonable delay cost Gutierrez the opportunity to obtain citizenship under the CCA and thereby avoid removal.
However, we cannot estop the United States on the facts of this case. We are bound by our published opinion in Robert *182 son-Dewar v. Holder,[7] which rejected a similar equitable estoppel claim. Robertson-Dewar, like Gutierrez, claimed that he became a lawful permanent resident before his eighteenth birthday and thereby became eligible for citizenship.[8] However, USCIS inexplicably waited eleven years before ruling on Robertson-Dewar’s application for a certifícate of citizenship.[9] As a result of its extreme delay, the United States had still not adjudicated Robertson-Dewar’s application by the time it initiated removal proceedings against him.[10]
Robertson-Dewar argued that “the government should be equitably estopped from deporting him because he should have been granted citizenship based on the application his father filed before he turned eighteen.”[11] He claimed that “the government should not be permitted to deport him because of its failure to timely perform a mandatory duty.”[12] ■
We disagreed. We noted that “[cjourts have been exceedingly reluctant to grant equitable estoppel against the government.”[13] “ ‘[T]o state a cause of action for estoppel against the government, a private party must allege more than mere negligence, delay, inaction, or failure to follow an internal agency guideline.’ ”[14] Instead, the petitioner must establish, among other things, “affirmative misconduct by the government.”[15]
We concluded that Robertson-Dewar failed to show “affirmative misconduct by the government that goes beyond mere negligence or delay.”[16] Because Robertson-Dewar presented no “evidence that the government delayed ruling on his application with the intent of not acting therein until he had aged out of the statute,” he was “not entitled to the remedy of equitable estoppel to preclude his deportation.”[17]
In all relevant respects, Robertsorir-De-war is indistinguishable from the instant case. There is no evidence that the United States purposefully “delayed ruling on [Gutierrez’s] application with the intent of not acting therein until he had aged out of the statute,”[18] so there is no evidence of affirmative misconduct. We must therefore reject Gutierrez’s equitable estoppel argument.
PETITION DENIED.[19]

. See 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i).

. Id. § 1431.

. Id.

.See Gonzalez-Lupercio v. Lynch, 613 Fed.Appx. 443, 444-45 (5th Cir. 2015) ("Since Gonzalez failed to establish that he was admitted for lawful permanent residence while *181 under the age of eighteen, the BIA did not err in finding that he did not satisfy the statutory requirements for derivative citizenship.” (citing Pena v. Holder, 521 Fed.Appx. 347, 348 (5th Cir. 2013))).

. 8 U.S.C. § 1255(b). Accord 8 C.F.R. § 1245.2(a)(5)(ii) ("If the application is approved, the applicant’s permanent residence shall be recorded as of the date of the order approving the adjustment of status.”).

. We therefore disagree with the dissent's assertion that the 1-89 Form "ha[s] the effect of conferring [lawful permanent resident] status” under the facts of this case.

. 646 F.3d 226 (5th Cir. 2011).

. Id. at 227, 229.

. Id. at 227.

. Id.

. Id. at 229.

. Id.

. Id. (citing Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)).

. Id. (quoting Fano v. O’Neill, 806 F.2d 1262, 1265 (5th Cir. 1987)) (brackets and internal quotation marks omitted).

. Id. (citing United States v. Bloom, 112 F.3d 200, 205 (5th Cir. 1997)).

. Id. at 230.

. Id.

. See id.

. The dissent would also "conclude that Gutierrez is entitled to equitable tolling." However, Gutierrez does not raise an equitable tolling argument in his brief. "This court ‘will not raise and discuss legal issues that [an appellant] has failed to assert.’ " Longoria v. Dretke, 507 F.3d 898, 901 (5th Cir. 2007) (quoting Brinkmann v. Abner, 813 F.2d 744, 748 (5th Cir. 1987)).