GRAVES, Circuit Judge,
dissenting.
Because I would grant the petition for review, I respectfully dissent.
*183 Orlando Gutierrez began residing in the United States with his parents and siblings in February of 1985 when he was approximately two years old. Gutierrez was brought to the United States by his father, who was then a Lawful Permanent Resident (LPR). His father was naturalized on July 25,1997, when Gutierrez was fourteen years old. His father filed an application for adjustment of status for Gutierrez just a few months later on October 28, 1997. Gutierrez attended his adjustment interview on May 30, 2000, when he was seventeen years and two months old. At the hearing, both Gutierrez and his sister were told they would have their LPR cards within three months. The sister received her card approximately two months later. Gutierrez did not receive his card for nearly four years. Then in 2013, Gutierrez was placed in removal proceedings as a LPR for a conviction earlier that year.
Gutierrez asserts that the BIA erred in its conclusion that he did not obtain derivative citizenship under the Child Citizenship Act (CCA) because his application for permanent residence was not approved until March 15, 2004, which was after his eighteenth birthday. Specifically, Gutierrez asserts that, for purposes of the CCA, the certification of the 1-89 form was sufficient to demonstrate that he was a lawful permanent resident prior to his eighteenth birthday and allowed him to automatically acquire citizenship.
Under the CCA:
A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:
(1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.
(2) The child is under the age of eighteen years.
(3)The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.
8 U.S.C. § 1431(a).
The only issue is whether Gutierrez was residing pursuant to a lawful admission for permanent residence prior to his eighteenth birthday. Gutierrez asserts that he was because his application for adjustment was approved on May 30, 2000, when he .was still seventeen years old. The BIA concluded that Gutierrez did not derive citizenship until March 14, 2004, under 8 C.F.R. § 1245.2(a)(5)(ii).
There is no authority to indicate that the INS certification of Gutierrez’s 1-89 form does not have the effect of conferring LPR status for the limited purpose of complying with section 1431(a)(3) when, as here, the government misrepresented to Gutierrez that he would receive his permanent resident card within three months, the government misrepresented other reasons for the delay and concealed the actual reason for the delay, the petitioner diligently and timely did everything he could do, and the delay was entirely the fault of the government.
Under 8 U.S.C. § 1255(a), Gutierrez was eligible to have his status adjusted by showing: “(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.” 8 U.S.C. § 1255(a). Gutierrez was eligible upon application and, from that point on, the process was basically a procedural formality. Further, as Gutierrez asserts, the DHS officer certified on May 30, 2000, that he was entitled to receive his LPR card.
*184 However, even if the INS certification of Gutierrez’s 1-89 form could not have the effect of conferring LPR status for the limited purpose of complying with section 1431(a)(3), I would conclude that Gutierrez is entitled to equitable tolling. The record here establishes that Gutierrez clearly demonstrated the due diligence necessary to invoke equitable tolling.
This court has said that:
As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules, but we draw on general 'principles to guide when equitable tolling is appropriate. We must be cautious not to apply the statute of limitations too harshly.
Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999).
On habeas, this court has applied equitable tolling where a district court order unintentionally misled a prisoner. United States v. Patterson, 211 F.3d 927, 931 (5th Cir. 2000).
In immigration cases, courts have applied equitable tolling to statutory deadlines. See Iavorski v. INS, 232 F.3d 124 (2d Cir. 2000) (filing deadline may be equitably tolled, but petitioner did not exercise due diligence); Borges v. Gonzales, 402 F.3d 398, 406 (3d Cir. 2005) (180-day limitation for reopening in absentia order of removal could be tolled due to counsel’s fraud); Varela v. INS, 204 F.3d 1237 (9th Cir. 2000) (tolling of filing deadline for motion to reopen after legal assistant incorrectly assured alien he did not have to leave United States before nine-month voluntary departure deadline) superseded by statute as stated in Granados-Oseguera v. Mukasey, 546 F.3d 1011 (9th Cir. 2008); and Lopez v. INS, 184 F.3d 1097, 1100 (9th Cir. 1999) (180-day filing deadline provided in 8 U.S.C. § 1252b(c)(3) is subject to equitable tolling).
Here, Gutierrez was required by statute to obtain LPR status. He applied for it years in advance — as soon as his father was naturalized. He showed up for his interview. The government misrepresented to Gutierrez that he would receive his permanent resident card within three months. The government also made other affirmative misrepresentations as to the reason for the delay in response to the repeated attempts by the Gutierrez family to resolve the matter and concealed the fact that the paperwork was misfiled.[1]
Alternatively, Gutierrez asserts that the doctrine of equitable estoppel bars the government from removing him and denying his citizenship claim.
A party seeking equitable estoppel against the government must establish:
*185 (1) affirmative misconduct by the government, (2) that the government was aware of the relevant facts and (3) intended its act or omission to be acted upon, (4) that the party seeking estoppel had no knowledge of the relevant facts and (5) reasonably relied on the government’s conduct and as a result of his reliance, suffered substantial injury.
Robertson-Dewar v. Holder, 646 F.3d 226, 229 (5th Cir. 2011).
The majority concludes that it cannot estop the United States here under Robertson-Dewar, which it says is indistinguishable. I disagree because Robertson-Dewar is distinguishable. Unlike Gutierrez, Robertson-Dewar submitted the wrong form, offered no evidence that a DHS officer had certified he was entitled to citizenship and offered nothing other than the delay to satisfy the prongs required for equitable estoppel to apply. Here, Gutierrez submitted the correct form, offered evidence that a DHS officer had certified he was entitled to LPR status and he can satisfy the applicable prongs, as discussed below. Further, this court specifically acknowledged in Robertson-Dewar that it was “not called upon to decide whether a court can ever grant equitable estoppel against the government.” Robertson-Dewar, 646 F.3d at 230.
With regard to Gutierrez, under the first prong, “[ajffirmative misconduct requires an affirmative misrepresentation or affirmative concealment of a material fact by the government.” Linkous v. United States, 142 F.3d 271, 278 (5th Cir. 1998) (internal marks and citation omitted). In this case, the government misrepresented to Gutierrez that he would receive his permanent resident card within three months. He did not receive his card within three months. The government also made other affirmative misrepresentations as to the reason for the delay in response to the repeated attempts by the Gutierrez family to resolve the matter, i.e., the officer got married, went on a honeymoon,- fingerprints, etc. Moreover, the government affirmatively concealed the fact that Gutierrez’s paperwork was misfiled.
Under prong two, the government was aware of the relevant facts because the Gutierrez family repeatedly contacted them about the delay. There was correspondence, forms and testimony to support this contact. Further, any misfiling was done by the government.
Under prong three, the government intended its act or omission to be acted upon because the Gutierrez family was instructed to just wait. The sister’s card indeed arrived within three months. Upon additional inquiries as to the reason for the delay with Gutierrez’s permanent resident card, the government then instructed the Gutierrez family to keep waiting and eventually told them to stop returning to the office.
Under prong four, the record indicates that Gutierrez had no knowledge of the relevant facts until contacting an out-of-state office.
Under prong five, Gutierrez had no choice but to rely on the government’s conduct, thus, his reliance was reasonable. This is supported by the fact that he eventually received his permanent resident card. He suffered substantial injury in that there is an order for his removal and he has been denied citizenship.
Thus, I would conclude that in a ease such as this where the government provided a time-frame, repeatedly instructed Gutierrez to wait and provided numerous excuses despite the diligent effort of the Gutierrez family, the unreasonableness of the delay combined with the affirmative misrepresentations and concealment of the *186 actual reason for the delay warrant the application of equitable estoppel.
For these reasons, I would grant the petition for review and I respectfully dissent.

. Gutierrez’s mother testified that when his card did not arrive, she went to the Dallas INS office nine or ten times and was given various excuses about the officer in charge of the case having gotten married, being away on a honeymoon and leaving things in "disarray." She also stated that an INS official finally told her not to return to the INS office or security would eject her. Gutierrez’s father also made repeated inquiries with the INS.
Gutierrez’s mother also testified regarding letters they had sent to the Governor and a United States Senator attempting to get the matter resolved. In the letter, Gutierrez’s father stated that INS officials had said the delay was a result of waiting for an FBI rap sheet based on Gutierrez’s fingerprints.
Gutierrez's mother further testified that she ultimately got into contact with an INS official in an out-of-state office who investigated Gutierrez's case and discovered a “huge error,” which was that his paperwork had been "mixed up” with his sister’s papers and filed in her folder. Gutierrez’s mother testified that the official forwarded the information to the Dallas INS office, which made a new appointment for Gutierrez and that shortly thereafter Gutierrez received his permanent resident card in the mail.