# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 14, 2023

Lyle W. Cayce
Clerk

No. 22-60651
Summary Calendar
_____

Victor Manuel Alvarez,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A078 859 591

_____

Before Jones, Southwick, and Ho, *Circuit Judges*.

Per Curiam:[*]

Victor Manuel Alvarez, a native and citizen of Mexico, petitions for review of a decision of the Board of Immigration Appeals (BIA) dismissing his appeal and affirming the immigration judge's (IJ's) denial of his request for deferral of removal under the Convention Against Torture (CAT).

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-60651

This court reviews the BIA's decision and considers the IJ's decision only to the extent it influenced the BIA. *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012). The BIA's factual findings are reviewed for substantial evidence, and its legal conclusions are reviewed de novo. *Id.* The substantial evidence test "requires only that the BIA's decision be supported by record evidence and be substantially reasonable." *Omagah v. Ashcroft*, 288 F.3d 254, 258 (5th Cir. 2002). This court will not reverse the BIA's factual findings unless the evidence compels a contrary conclusion. *Chen v. Gonzalez*, 470 F.3d 1131, 1134 (5th Cir. 2006). The petitioner has the burden of showing that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Id.*

Alvarez argues that the Government should be equitably estopped from denying his citizenship given that it took four years to adjudicate his adoptive father's naturalization application and another two years to process Alvarez's application for an adjustment of status. Because the BIA did not have jurisdiction over Alvarez's equitable estoppel claim, we review the issue de novo. *See Robertson-Dewar v. Holder*, 646 F.3d 226, 229 (5th Cir. 2011).

Alvarez has not alleged that the Government purposefully "delayed ruling on [his] application with the intent of not acting therein until he had aged out of the statute." *Robertson-Dewar*, 646 F.3d at 230; *see* 8 U.S.C. § 1431(a). Moreover, even if we were to agree with Alvarez that the processing delays in his case were unreasonable and/or unwarranted, delays alone are not sufficient to demonstrate affirmative misconduct on the part of the Government.[1] *See INS v. Miranda*, 459 U.S. 14, 19 (1982) ("Proof only

---

[1] Alvarez argues that the Government's conduct in his case amounted to more than mere negligence and delay because of systematic backlogs existing at the former Immigration and Naturalization Service (INS) during the time that his adoptive father's naturalization application was pending. But even the alleged systematic nature of the delays within the INS does not demonstrate anything more than "negligence, delay,

No. 22-60651

that the Government failed to process promptly an application falls far short of establishing such conduct."); *see also Robertson-Dewar*, 646 F.3d at 230 (requiring affirmative misconduct "that goes beyond mere negligence or delay").

In the alternative, Alvarez argues that this court should exercise its equitable powers to treat his application for an adjustment of status as being approved on the date it was filed, when he was 16 years old. But treating Alvarez's application for an adjustment of status as approved on the date he filed it would contravene the plain language of 8 U.S.C. § 1255(b). Thus, equitable tolling in Alvarez's case would be inconsistent with the Supreme Court's statement that "[n]either by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of [the statute's] limitations." *INS v. Pangilinan*, 486 U.S. 875, 885 (1988).

Alvarez also argues that the IJ erred in denying his request for deferral of removal based on an adverse credibility determination, which was upheld by the BIA.[2] Credibility determinations are factual findings that this court reviews for substantial evidence. *Morales v. Sessions*, 860 F.3d 812, 817 (5th Cir. 2017).

---

inaction, or failure to follow an internal agency guideline." *Robertson-Dewar*, 646 F.3d at 229. Moreover, as the Government notes, the systematic nature of the problems at INS tends to show that Alvarez's application was not singled out for disparate treatment, but was simply caught up in an inefficient Government agency.

[2] Despite Alvarez's prior conviction for conspiracy to possess with intent to distribute cocaine, the criminal-alien jurisdictional bar in 8 U.S.C. § 1252(a)(2)(C) does not preclude this court from reviewing factual challenges to the BIA's CAT order. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020); *see also Tibakweitira v. Wilkinson*, 986 F.3d 905, 911 (5th Cir. 2021).

The IJ found that Alvarez's testimony regarding how he became involved in the drug trafficking conspiracy was directly contradicted by the factual proffer from his criminal case. The factual proffer states the following in relevant part:

> ALVAREZ further explained that he had been held responsible for the theft of $1.9 million dollars by another individual from a Mexican cocaine trafficker in Chicago known as "Guero" (ZEPEDA) and that as a result, he was sent to Florida to participate in the planned cocaine deal as a way to repay the debt.

Alvarez testified that his former roommate Angel Lopez had stolen $1.9 million from the cartel and that this theft had led to Alvarez's involvement in drug trafficking. This testimony, the IJ found, was directly contradicted by the factual proffer from Alvarez's criminal case, which according to the IJ's reading, indicated that Zepeda had stolen the cartel's money, not Lopez.

Alvarez responds that the IJ's reading of the factual proffer is clearly erroneous. He claims that he never told federal agents that Zepeda stole the cartel's money. He maintains that the money was stolen *from* Zepeda *by* Lopez, which is consistent with his testimony before the IJ.

Though the factual proffer is not a model of clarity, the IJ's finding that Alvarez's testimony was inconsistent with the proffer is reasonable given that the factual proffer states that the $1.9 million was stolen "by another individual" without any mention of Lopez. Further, Alvarez's possible alternate reading of the evidence is insufficient to show that the record compels the conclusion that Alvarez testified credibly. *See Chen*, 470 F.3d at 1134; *see also Revencu v. Sessions*, 895 F.3d 396, 401 (5th Cir. 2018).

Alvarez also challenges the IJ's reliance on his failure to assert his claim of coercion during his criminal case as a basis for finding that he was not credible. Though Alvarez testified that he was "recruited" into the drug trafficking organization by the two men who threatened him at his apartment,

the IJ noted that there was no mention of coercion in either the factual proffer or in the transcript from Alvarez's sentencing hearing. The IJ also found it "very significant" that Alvarez's alleged coercion was not addressed at sentencing given that a claim of coercion would tend to mitigate Alvarez's culpability and could serve as a basis for a downward sentencing departure under U.S.S.G. § 5K2.12.

Alvarez responds that he did not discuss the alleged coercion at sentencing because his codefendants were present. The Government contends that this response is illogical given that a U.S.S.G. § 5K1.1 motion had been filed, and Alvarez knew that his cooperation would be discussed at sentencing. Even if Alvarez's response were logical, however, "[n]either an IJ nor the BIA is required to accept a petitioner's explanation for [the] plain inconsistencies in [his] story." *Morales*, 860 F.3d at 817 (internal quotation marks and citation omitted). As such, the IJ reasonably relied on the unsupported nature of Alvarez's testimony that he was coerced into joining the drug conspiracy. *See Omagah*, 288 F.3d at 258.

The IJ also found that Alvarez was not credible because he omitted from his testimony any discussion of his plan to steal cocaine from the drug trafficking organization. Alvarez argues that the IJ's reliance on this omission was improper because he had not been confronted with it at his removal hearing or been given an opportunity to explain on the record. *See Nkenglefac v. Garland*, 34 F.4th 422, 429 (5th Cir. 2022).

The BIA did not explicitly address Alvarez's confrontation argument in adopting the IJ's adverse credibility finding. The BIA did, however, endorse the IJ's reliance on the omission in finding that Alvarez was not credible. Nonetheless, because the other specific discrepancies and omissions relied on by the IJ and discussed in the BIA's decision are sufficient to support the adverse credibility determination, any error in the IJ's reliance

on this omission is not sufficient to warrant reversal of the BIA's adverse credibility finding. *See Chen*, 470 F.3d at 1134.

Alvarez has failed to demonstrate that, under the totality of these circumstances, no reasonable factfinder could make an adverse credibility ruling in his case. *See Morales*, 860 F.3d at 817. Substantial evidence therefore supports the BIA's adverse credibility determination. *See id.* Without credible evidence, the BIA had no basis to grant Alvarez's request for CAT relief. *See Chun v. INS*, 40 F.3d 76, 79 (5th Cir. 1994). As such, we need not consider Alvarez's arguments related to the BIA's alternative finding that even if Alvarez were credible, he had failed to show that he was eligible for protection under the CAT *See Efe v. Ashcroft*, 293 F.3d 899, 907-08 (5th Cir. 2002).

The petition for review is DENIED.